506 So.2d 957 (1987)
John MANZANARES, Plaintiff-Appellant,
v.
Jack MECHE, et ux, Defendants-Appellees.
No. 86-364.
Court of Appeal of Louisiana, Third Circuit.
April 23, 1987.
Writ Denied July 1, 1987.
*959 Morrow & Morrow, Patrick C. Morrow, Opelousas, for plaintiff-appellant.
David Carriere, Opelousas, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
STOKER, Judge.
This is a dispute over the use of a portion of a strip of land lying between two fences traversed by a blacktopped roadway. The owner to the north of the strip, claiming possession of the strip as private property, sought by means of an injunction, to prevent use of the strip by occupants of land south of the strip and also prayed for damages for trespass.
The nature of the action is in dispute.
The trial court held that the strip of land was a public road, dismissed the plaintiff's action and denied relief to the defendants on their demand for damages and attorney's fees.
The plaintiff appealed; the defendants answered the appeal.

FACTS
The controversy in this case involves immovable property located in St. Landry Parish, Louisiana, north of Leonville and east of Louisiana Highway 103. The parties claim ownership of property abutting on what once was an unimproved private lane which ran east from Louisiana Highway 103 for a distance sufficient to serve several homesites on the north side of the lane. In 1977 the lane was blacktopped. The plaintiff, John Manzanares, and his wife, Jo Ann Manzanares, own 4.29 acres of land, most of which is on the north side of the blacktopped lane. The Manzanares tract is long and narrow, and along its narrow side measures 180 feet. Manzanares maintains that the lane in question runs through the south end of his property. The defendants are Jack Meche and Elizabeth Melancon Meche. They occupy property opposite plaintiff, which is located south of the blacktopped lane. The Meche property has a frontage on the lane of 125 feet. Although the evidence establishes that the Meche tract and the Manzanares tract are contiguous, no map or evidence indicates how the two frontages or segments are positioned in relation to one another.
The defendants live on land which was once the property of Mrs. Meche's grandfather, Abdon Melancon. Fences enclose the blacktopped lane, but the fences enclose a strip much wider than the blacktopping. There are ditches on each side of the asphalt blacktopping and space beyond to the north and south of the ditches. The Meche property also has frontage on Louisiana Highway 103, and that highway was used for egress and ingress by the Meches until the incident which spawned this controversy. The fence on the south side of the lane area has been continuous for many years, and none of the property owners along the south side have used the lane.
In October 1983 the Meches removed part of the southern fence, placed a culvert in the ditch, covered the area with dirt and proceeded to use the construction as a driveway from the asphalt lane to their trailer. The plaintiff opposed that use by defendants and brought this suit. Manzanares initially claimed ownership of the area south of the lane up to the fence and sought damages for trespass and an injunction against further trespass or destruction of the fence. A temporary restraining order was issued by the court and ultimately a preliminary injunction was granted.
The parties engaged in considerable maneuvering through pleadings prior to trial for the apparent purposes of avoiding the assumption of the burden of proof in a petitory action. Although the trial court apparently concluded that the action was petitory, plaintiff and defendants amended their pleadings to avoid any allegations of ownership. After trial, the trial court concluded, in written reasons, that all of the area between the fences on the north and south was public property because the lane in question was a public road.
*960 The trial court evidently based its conclusion on LSA-R.S. 48:491 B which provides in pertinent part:
"All roads or streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by authority of a parish governing authority within its parish, or by authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be ..."
There is factual basis for finding that the asphalt used for blacktopping the lane was furnished by the Police Jury of St. Landry Parish and was evidently spread or laid down by Police Jury employees using Police Jury equipment. As we will note later, the parties accept the trial court's finding that, as a result of the action of the policy jury, the lane became dedicated as a public road.
We conclude that the plaintiff's action was a hybrid action. It was an action for trespass and for injunctive relief based upon a claim of possession as we will explain in greater detail later in this opinion.
The trial court recalled the preliminary injunction, denied damages sought by both parties, and assessed the costs to the plaintiff. As stated above, both parties have appealed. We will set aside the trial court's judgment. In the remainder of this opinion we will set forth our resolution of the issues which will require that we describe the pertinent pleadings and expand further on the facts.

ISSUES
On appeal before this court, appellant Manzanares accepted the trial court's ruling that the lane was a public road. However, appellant claims that the trial court erred in fixing the right of way so as to include all of the area between the fences. For a short road or lane which soon deadends, appellant claims that the area between the fences is excessive as right of way and should be trimmed to what is reasonably necessary under the circumstances.
The Meches, as appellees, take a position contrary to that of Manzanares. They urge that the trial court not only correctly held that the lane in question was "burdened by a servitude in favor of the public," but also correctly fixed the right of way to run from fence to fence.
Although the appellant, Manzanares, does not complain of the trial court holding that the lane was a public road, he urges that the trial court erred (1) in failing to recognize him as possessor of the narrow strip of land lying beyond what is reasonably necessary as road right of way and (2) in failing to require the appellees to adhere to the higher burden of proof for what Manzanares claims is a petitory action as converted by appellees. In order to understand plaintiff-appellant's contentions, it is necessary that the pleadings be reviewed and considered. Before doing so, we will note that defendants answered the appeal, and have urged that the trial court erred in denying their claim for damages and attorney's fees.

REVIEW OF THE PLEADINGS
Numerous pleadings have been filed in this suit, but neither plaintiff nor defendants have asked to be recognized as owners of the property in dispute. The trial court found, and we largely agree, that the area in dispute lies south of the south ditch running along the blacktopped lane and extends south to the Melancon fence. The trial court found the area to be about 9 feet wide at its west end and about 12 feet wide on its east end. Plaintiff's property has a width or frontage of 180 feet. Consequently, the strip in question would extend for that distance with a width of between 9 and 12 feet.
Plaintiff instituted this action by alleging ownership of a 4.29-acre tract measuring 180 feet by 1210 feet between parallel lines. A registered surveyor's plat shows the property to be in the shape of a parallelogram. Plaintiff alleged that a "Parish Road" ran east through his property, that defendants' property is located to the south of plaintiff's property, and that plaintiff *961 owned approximately 10 feet between the Parish Road and defendants' property.
Plaintiff's original petition contains a prayer for injunctive relief prohibiting defendants "from cutting petitioner's fences or trespassing on petitioner's property." There is also a prayer for damages "caused to or by petitioner's cattle wandering away from the enclosure." The prayer then contains the usual demand for a temporary restraining order, a preliminary injunction, and finally for a permanent injunction.
A temporary restraining order was issued. The defendants responded by bringing a rule to dissolve the temporary restraining order and for damages and attorney's fees. In their rule the defendants alleged that the "property upon which the fence alleged to be `cut' is owned by the defendant, ELIZABETH MELANCON MECHE."
The trial court refused to dissolve the temporary restraining order and granted a preliminary injunction. The defendants then answered, alleging that title to the property in question "abides in them or, alternatively, in a third party not a party in this suit." The plaintiff subsequently amended his petition to base his suit on possession of the strip alleged to be about 10 feet in width lying between the road and defendants' property. All reference to ownership was deleted. The prayer asked for the original relief granted and for judgment against the defendants "recognizing Petitioner's right to possession of the property." Defendants brought a motion to strike the supplemental and amending petition which was denied.
The next pleading was an amended answer filed by defendants. They denied that Manzanares had ever possessed the strip in question, alleged that title to the property was in Abdon Melancon, his widow and heirs, denied that the fence between their property and the disputed strip belonged to Manzanares, and then claimed ownership of the fence. In their amending answer they also amended the rule to dissolve the restraining order to delete any language which would suggest defendants owned any property north of the fence removed by them. The defendants averred that they owned the property upon which the fence was located but not north of it. The court denied a motion to strike defendants' amended answer filed by plaintiff.
The suit went to trial on these pleadings. The review of the pleadings set forth above shows that all parties to the suit amended their pleadings to eliminate the question of ownership and the necessity of proving title to the strip 180 feet long and measuring 9 and 12 feet at the ends. Nevertheless, the trial court approached the case as a petitory action.

NATURE OF THE ACTION
After hearing the evidence, the trial court held that the blacktopped lane was a public road and the right of way was established by the fences on either side. Thus, the trial court made no ruling characterizing the nature of the action. In his appeal Manzanares alleges that the trial court erred in this respect. The first two specifications of error listed by Manzanares are as follow:
1. The Trial Court erroneously and in manifest error failed to recognize appellant's possession of that certain strip of land located south of the parish road between the ditch and appellee's northern boundary.
2. The Trial Court erroneously and in manifest error failed to recognize that appellee, upon his converting this action into a petitory action, must adhere to a higher burden of proof than necessary for a possessory action.
The plaintiff-appellant takes an inconsistent position. However, we will not dwell on the matter to any extent because we do not believe that a petitory action is involved. Plaintiff-appellant would have us hold that in defendants' original answer they converted the action from a possessory action into a petitory action by claiming ownership of the strip of land in question. Actually, both parties have carefully and purposefully avoided allowing the suit to rest on title. Defendants did so by their *962 amended answer as a matter of precaution even if it could be said that they originally converted the suit to a petitory action. Defendants have done exactly what plaintiff did. There is no merit to plaintiff-appellant's specification of error Number 2, and it requires no further discussion.
Earlier we stated that this suit is an action for trespass and for injunctive relief based upon a claim of possession. Insofar as the action may be a possessory action in nature, we find no prohibition to the assertion of a trespass action in the same suit with it. In fact, the trespass would depend upon proof of possession rather than ownership. LSA-C.C.P. art. 3662(3).
The plaintiff's petition asks for relief from an alleged trespass by the defendants. Title II of Book 7 of the Louisiana Code of Civil Procedure, art. 3651, et seq., contains provisions governing real actions, including petitory and possessory actions. The introduction to the Title states:
"No attempt has been made to include in this Title certain of the fringe actions which bear some resemblance to the real actions, such as the action of trespass, the action to remove a cloud from title, and the action of specific performance."
A suit for damages for trespass is recognized as a separate and distinct action from those enumerated in the Code of Civil Procedure. Harvey v. Havard, 287 So.2d 780 (La. 1973); Garrett v. Martin Timber Co., Inc., 391 So.2d 928 (La.App. 2d Cir. 1980), writ denied, 397 So.2d 804 (La. 1981). A remedy for trespass is available even to one who is only a possessor of the property, even against the owner. Garrett, supra; Loeblich v. Garnier, 113 So.2d 95 (La.App. 1st Cir.1959).
When the defendants asserted in their answer that the plaintiff was not the owner of the strip in question, the plaintiff was given leave of court to amend the petition to state that plaintiff had maintained peaceful possession of the strip for one year. The amendment met the requisites of a possessory action under LSA-C. C.P. art. 3658, and also reiterated the prayer for the relief demanded in the original petition.

REASONABLE RIGHT OF WAY WIDTH
We conclude that the trial court erred in fixing the width of the right of way of the section of public road in question as being delineated by the location of the fences. The blacktop is shown by a plat of survey in the record, as it runs through plaintiff's property, to be 18 feet wide on the west and 15 feet wide on the east. The roadway dead-ends after serving a half-dozen or so homesteads on the north of the road. Traffic obviously is not extensive. The survey shows that from fence to fence on the west the distance is 63.8 feet. No figure is shown for the east. Shoulders on both the north and south sides of blacktop range between 5 and 7 feet in width. Beyond the shoulders, the ditches on the north and south sides of the road range between 7 and 8.5 feet in width. The evidence does not establish a need for a right of way for the public road in this case of nearly 64 feet in width. We think the evidence in the record is sufficient for us to determine a right of way ourselves. See Smith v. Mahfouz, 489 So.2d 409 (La.App. 3d Cir.1986), writ denied, 494 So.2d 1181 (La. 1986).
If a right of way is reserved running from the north edge of the north ditch to the south edge of the south ditch, the right of way would be 45 feet on the west and 43 feet on the east. On the west, some 18.8 feet (63.8'-45' = 18.8') would lie north and south of the two ditches. The survey shows that the strip in question in this litigation measures 9 feet on the west and 12 feet on the east.
Our conclusion is that a right of way to include shoulders and ditches of between 43 and 45 feet is sufficient under the circumstances of this case. The excess should fall outside of the right of way of the public road and would be subject to ownership or possession of private persons. For these reasons, the trial court erred in its judgment. For further reasons which *963 we will give, the trial court's judgment must be set aside and the judgment recast.

RIGHTS OF A POSSESSOR
One who has possessed a thing for over a year acquires the right to possess it. LSA-C.C. 3422. A possessor is considered provisionally as owner of the thing he possesses until the right of the true owner is established. LSA-C.C. art. 3423.
LSA-C.C.P. art. 3662 provides for the relief which may be granted to a successful plaintiff in a possessory action. The article provides in part:
"A judgment rendered for the plaintiff in a possessory action shall:
(1) Recognize his right to the possession of the immovable property or real right therein, and restore him to possession thereof if he has been evicted, or maintain him in possession thereof if the disturbance has not been an eviction;
(2) Order the defendant to assert his adverse claim of ownership of the immovable property or real right therein in a petitory action to be filed within a delay to be fixed by the court not to exceed sixty days after the date the judgment becomes executory, or be precluded thereafter from asserting the ownership thereof, if the plaintiff has prayed for such relief; and
(3) Award him the damages to which he is entitled and which he has prayed for."
Paragraph (b) of the Official Revision Comments under this article states that the forms of relief provided by paragraphs (2) and (3) of this article are optional. In addition, the relief provided in Article 3662 for injunctive relief in possessory actions is authorized in Article 3663.
The plaintiff in this case has prayed for recognition of his rights as possessor of the strip of land in question, for damages, and for injunctive relief.

FACTS CONCERNING POSSESSION
In this case plaintiff is the only party claiming possession of the strip between the south ditch and the fence 9 to 12 feet south of the ditch. Defendants do not contend that they have exercised possession of the strip. The testimony does indicate that at some unspecified time the defendants laid a small sewer line from their property so that it would discharge into the ditch between the strip in question and the blacktopped lane.
The acts of possession which the plaintiff relies on consist of grazing cows in the area between the fences and keeping the grass down in the ditch and the strip. For some time, well over a year, until defendants opened the fence which led to this suit, Manzanares and his father-in-law, Walter Lalonde, had put their cattle out to graze in the area between the fences. The lane dead-ends to the east at a distance from Louisiana Highway 103 of about one-half mile, according to one witness. The testimony discloses that approximately a half-dozen homesteads have existed on both sides of the lane over a period of years. Apparently all owners to the south have used means of access to the south of them, and the fence on the south side of the lane has not contained openings. To the west, where the lane formed a junction with Louisiana Highway 103, a cattle guard prevented cattle allowed to roam in the lane and its shoulders from leaving the lane area.
Manzanares described his property in his original petition as having a width of 180 feet.[1] All pertinent testimony confined his *964 claim to the 180-foot width of his property. Therefore, his possession of the strip in question would be confined to that particular 180 feet of the strip. Walter Lalonde and his wife, who are the father and mother of Mrs. Manzanares, live just to the east of Manzanares and north of the lane. The Lalonde cattle and the Manzanares cattle run together. Lalonde has generally had about three head and Manzanares about five head.
Manzanares and his wife have kept the strip in question mowed. Mr. Manzanares has used a shredder at times, with the help of Lalonde. Mrs. Manzanares has used a weedeater and push or power mower. The weedeater has been used primarily for the ditch. In some areas chemicals, presumably herbicides, have been applied. Through the grazing of the cattle and grass cutting, the strip in question has been maintained by Mr. and Mrs. Manzanares up to the fence at the north of defendants' property. (This is the fence cut by the Meches in order that they could install their driveway.)
We are aware of the requirements for the exercise of possession, particularly of the necessity of enclosures. However, in this case we are faced with the circumstances that possession is claimed relative to a rather narrow strip adjacent to a roadway area. Clearly, the roadway and adjacent ditches must be left open for traffic utilizing the road. Under the circumstances, we see little means by which Manzanares and his wife could exercise possession over the strip other than grazing cattle on it and mowing the grass on it. The evidence preponderates to the effect that they did these things. The only question is whether these acts were sufficient to constitute acts of possession. We conclude that they were. Plaintiff is entitled to be maintained in possession of the strip from the fence at the defendants' property line north to the ditch. See Liner v. Louisiana Land & Exploration Company, 319 So.2d 766 (La. 1975); Wagley v. Cross, 347 So.2d 859 (La.App. 3d Cir.1977).
Defendants produced numerous witnesses whose testimony supports a contention that the fence at the defendants' north property line was originally north at, near, or beyond the ditch line. According to witnesses, Mrs. Meche's grandfather, Abdon Melancon, as owner of the strip and other frontage south of the land, moved the fence back from its former location in order to widen the space enclosing the lane. This point, if the facts are as contended, is not relevant. The point would be relevant only in a title or boundary action, and we are concerned only with possession.
What we have said so far applies only to the strip 180 feet long and measuring 9 feet in width at the west and 12 feet at the east. This strip does not include the fence on defendants' property line. Plaintiff has not possessed the fence. Therefore, plaintiff is entitled to no injunctive relief to prevent or prohibit defendants from removing the fence. An injunction in plaintiff's favor can only enjoin defendants from crossing the strip or making any work upon it; they may be required to remove their culvert and dirt from the ditch.
Unfortunately, in our view, the real controversy between the parties may have to be settled through an action to fix the boundary, or to determine who has title to the strip, and we can foresee that even such an action might not settle the issue. In any event, no one has asked that the title or boundary be passed upon. Some evidence of title was introduced at trial, but the purpose for such introduction is not clear. If title or boundary should be determined, it ought to be done in another proceeding in which the parties have opportunity to clearly attack that issue and properly prepare themselves for it.
With respect to damages, plaintiff has proved no specific damages. Because defendants have breached the fence on their property line, plaintiff fears that his cattle will wander out of the enclosure formerly made by the fences. However, plaintiff *965 has shown no proprietary right in the fence, and the evidence would indicate that it belongs to the defendants. Consequently, plaintiff cannot hold defendants to account for the security of his pasture privileges in the area of the lane.
With respect to the laying of the driveway across the strip, defendants will be ordered to remove all elements of this construction.
Plaintiff has not prayed for any damages for mental anguish, and none were proved.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is set aside insofar as it denies plaintiff-appellant relief. It is now ordered, adjudged and decreed that the preliminary injunction issued herein on June 5, 1985, by the Twenty-seventh Judicial District Court be, and it is hereby modified and recast to provide that defendants, Jack Meche and Elizabeth Melancon Meche are permanently restrained, enjoined and prohibited from trespassing on that strip of land lying immediately north of the fence on defendants' north boundary line measuring 180 feet along the fence line and extending to the ditch on the south side of the blacktopped road or lane which runs more or less parallel to the fence at defendants' property line, the eastern and western boundary line being the eastern and western boundary line of the property of plaintiff, John Manzanares, or the extensions thereof.
It is further ordered, adjudged and decreed that defendants be required, and they are hereby ordered to remove all materials, dirt or other things placed by them on the strip of land described above, and to remove the culvert or culverts from the ditch bordering the strip, and to remove all dirt and other covering which defendants placed over the ditch.
It is further ordered, adjudged and decreed that the right of plaintiff, John Manzanares, to the possession of the strip of land described above be recognized and that he be restored and maintained in such possession; such possession to be confined to that area of land lying to the north of defendants' property which is contiguous with the strip of land described above.[2]
We affirm the trial court's judgment denying the demands of appellants, Jack Meche and Elizabeth Melancon Meche, as plaintiffs in reconvention for damages and attorney's fees.
The costs of this proceeding in both the trial court and this court are assessed to the defendants-appellees.
JUDGMENT OF THE TRIAL COURT SET ASIDE IN PART AND AFFIRMED IN PART; PRELIMINARY INJUNCTION MODIFIED AND MADE PERMANENT; JUDGMENT RECOGNIZING, RESTORING AND MAINTAINING PLAINTIFF'S POSSESSION; JUDGMENT RENDERED.
NOTES
[1] Plaintiff sets forth the description of his property as follows:

"A certain tract or parcel of land, together with all improvements situated thereon, and measuring 5 acres more or less, situated in Section 35, Township Six South (T-6-S), Range Five East (R-5-E) and/or Section 15, Township Seven South (T-7-S), Range Five East (R-5-E), St. Landry Parish, and more particularly described as follows:
Beginning at the southwest corner of Lot 15 thence east along the southern boundary of said Lot a distance of 180 feet thence northerly a distance of 1,210 feet parallel to the western boundary thence west a distance of 180 feet to the western boundary of said Lot thence southerly a distance of 1,210 feet to point of beginning; said Lot 15 being identified on the map of survey prepared by Morgan Goudeau & Associates dated November 22, 1965 and attached to the Judgment of Possession in the Estate of Alcee Rivette et ux and recorded as Original Act No. 515311-A in Conveyance Book Y-14 at page 245, records of the Clerk of Court's Office, St. Landry Parish, Louisiana."
[2] The trial court's judgment made no mention of the width of the right of way which it found in its reasons for judgment should be fixed as running from the fence on the north to the fence on the south side of the roadway. That judgment simply vacated the preliminary injunction which had been granted in plaintiff's favor and dismissed the demands of both parties. We find no necessity to provide for a width in our judgment. What we provide is sufficient to dispose of the issues in this case. Moreover, it should be borne in mind that our judgment in this suit runs only against the parties to the suit. It would perhaps be inappropriate for us to fix by judgment a right of way width for what is only a 180-foot segment of the public road and which, in any event, could not be binding on others not parties to this litigation.