417 So.2d 872 (1982)
Donald J. SMITH
v.
W. Lee OVERTON.
No. 14933.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
Richard Kilbourne, Clinton, for plaintiff-appellant.
W. Lee Overton, pro se.
William G. Carmichael, Clinton, for defendant-appellee.
Before COVINGTON, COLE and WATKINS, JJ.
WATKINS, Judge.
This is a boundary action filed by Donald J. Smith against W. Lee Overton. Upon *873 the filing by Overton of a peremptory exception of non-joinder of an indispensable party, plaintiff filed a supplemental petition, naming Saundra P. Overton, wife of W. Lee Overton, as a party defendant. The trial court fixed the boundary; Smith appealed, and the Overtons answered the appeal.
By instrument dated August 24, 1946, Haynes Lumber Company sold to Robert C. Graham, ancestor in title of Donald J. Smith, plaintiff, the following described property:
"A certain piece or parcel of ground containing 5.65 acres situated in East Feliciana Parish, Louisiana and described as the South One-half (S½) of the parcel of ground acquired by vendors from John C. Rogers on June 27, 1946 which said parcel of ground is described as follows, to-wit:
"1st: 10.80 acres described as beginning at the east corner of Section 47, T2S R2E; thence north 36 degrees west 7.82 chains; on section line to Ligon's southeast corner; thence south 54 degrees west 10.50 chains on Ligon's line to Highway 36; thence south 33 degrees east 12.30 chains on Highway 36 to Section line; thence north 33 degrees east 12.00 chains on section line to place of beginning. Location in Section 47, T2S R2E.
"2nd: One-half (½) Acre described as beginning north 36 degrees west 7.82 chains from the east corner of Section 47, T2S R2E; thence north 37 degrees west 0.477 chains to Ligon's southeast corner; thence south 54 degrees west 10.50 chains on Ligon's line to Highway 36; thence south 33 degrees east 0.477 chains on Highway 36; thence north 54 degrees east 10.50 chains to point of beginning, embracing one-half acre in Sec. 47, T2S R2E."
By instrument dated August 30, 1946, Haynes Lumber Company[1] sold to James H. McQuirter, ancestor in title of the Overtons, the following described property:
"A certain piece or parcel of ground, being and situated in East Feliciana Parish, Louisiana and containing 5.65 acres, described as being the North One-Half (N½) of the parcel of ground acquired by Haynes Lumber Company from John C. Rogers on June 27, 1946 which said parcel of ground is described as follows, to-wit:
"1st: 10.80 acres described as beginning at the east corner of Section 47, T2S R2E; thence north 36 degrees west 7.82 chains on section line to Ligon's southeast corner; thence south 54 degrees west 10.50 chains on Ligon's line to Highway 36; thence south 33 degrees east 12.30 chains on Highway 36 to Section line; thence north 33 degrees east 12.00 chains on section line to place of beginning. Located in Section 47, T2S R2E.
"2nd: One-half (½) acre described as beginning north 36 degrees west 7.82 chains from the east corner of Section 47, T2S R2E; thence north 37 degrees west 0.477 chains to Ligon's southeast corner; thence south 54 degrees 10.50 chains on Ligon's line to Highway 36; thence south 33 degrees east 0.477 chains on Highway 36; thence north 54 degrees east 10.50 chains to point of beginning, embracing ½ acre in Section 47, T2S R2E.
It will be noted that Haynes Lumber Company was the common ancestor in title of both plaintiff and defendants, and that the instruments of conveyance describe the properties conveyed by the instruments as respectively the "South One-half (S½)" and the "North One-Half (N½)" of a parcel of ground acquired by Haynes Lumber Company from John C. Rogers. The parcel of ground acquired by Haynes Lumber Company from Rogers is irregular in shape and the respective instruments make no attempt to establish by metes and bounds a *874 boundary between the North and South One-halves. Therein lies the root of the present problem; the instruments out of the common ancestor in title do not establish a definite boundary.
Robert C. Graham sold the South One-half to Smith, the present plaintiff, by instrument dated July 31, 1951, no precise boundary being given between that One-half and the North One-half.
The history of transfers of the North One-half is somewhat more complicated. By instrument dated June 28, 1946, James H. McQuirter and Archie McQuirter[2] sold to Haynes Lumber Company the North One-half, the property conveyed being stated to be bounded on the South by the "south half of said tract, now owned by Graham." Under identical description, by instrument dated November 19, 1947, Haynes Lumber Company sold the North One-half to Manuel Rivette and his wife, Geneva Cooper Rivette. Under the same description, by instrument dated July 2, 1949, Manuel J. Rivette and Geneva Cooper Rivette sold to Delos Morgan the North One-half. Delos Morgan and Jennie Romano Morgan, from whom he was judicially separated, then sold the North One-half to Nell H. Haynes by instrument dated October 13, 1972, under similar description.
Because Mrs. Haynes was having boundary problems with the owners of the tract to the north, who were Henry and Ida Wulff, she hired R. Dale Hodges, a licensed civil engineer affiliated with Pan American Engineers in Baton Rouge, to mark her northern boundary, and incidentally to fix her other boundaries, including the boundary with Donald J. Smith, who by that time owned the South One-half. The plat of survey made at that time, dated February 28, 1973, prepared by Hodges, was introduced in evidence as Exhibit D-2 and is made a part of this opinion. The trial court fixed the boundary between the Overtons (Mrs. Haynes' vendees, as will appear below) and Smith along the same line, as was done by Hodges in the 1973 survey.
By instrument dated July 10, 1978, Nell Haynes sold to W. Lee Overton, married to and living with Saundra P. Overton, the following described property:
"A certain parcel of ground with all the buildings and improvements thereon and appurtenances thereunto belonging, being and situated in the Parish of East Feliciana, State of Louisiana, containing 5.20 acres and designated on a plat of survey by Pan American Engineers, dated June 12, 1973 as A-1 in Section 47, T2S, R2E, more particularly described as:
Begin at the southeasternmost corner of said Tract `A-1' on Plank Road and proceed along Plank Road N 32° 52' 41" W a distance of 362.23 feet to a point and corner; thence proceed N 54° 36' 02" E a distance of 653.325 feet to a point and corner; thence proceed S 35° 48' 24" E a distance of 322.50 feet to a point and corner; thence S 51° 14' 38" W a distance of 672.706 feet to a point of beginning and corner, all as shown on a said tract of survey."
It will be noted that thus Mrs. Haynes conveyed to the Overtons, present plaintiffs, the North One-half, subject to a plat of survey annexed to the instrument that had been prepared by R. D. Hodges under date June 12, 1973. We have examined the plat of survey annexed to the instrument, another copy of which was introduced in evidence as Exhibit D-1, and find it practically identical to Exhibit D-2, which we have annexed to our opinion.
At the time of the purchase of the North One-half by the Overtons, Smith stated to Lee Overton that he would not accept the boundary between the North and South halves which had been fixed by Hodges. The dispute lay dormant for several years, and then after an exchange of messages with regard to the boundary, Smith filed the present boundary action.
*875 At the trial it was established that Hodges, who was the only expert witness but who was appointed surveyor only to establish the trial court's findings on the ground, had used as his point of origin in fixing the boundary when he made the 1973 survey the Southeast corner of Tract "A", as he found a fence post at that point which he assumed marked Smith's Northeast boundary. The fence post, Smith testified, was not intended to indicate a boundary but was merely part of a fence used to pen calves. In any event, we must assume, since Smith had erected the fence post, that Smith thought he owned at least as far to the Northeast as the location of the fence post.
Hodges further testified that there was a driveway used by Smith which entered Plank Road, which bordered the two properties on the West, at a point some eight feet (8') South of where he established the Northwest corner of the Smith tract. Hodges made no effort to run the boundary on the ground other than establishing the eastern and western ends of the boundary line, which he established as running in a straight line generally East and West.
Smith's main objection to the boundary as fixed by Hodges is that it cuts across a northern circular projection of his driveway (which circle leaves and then reconnects with the driveway, there being only one access to Plank Road). Part of this circular projection of Smith's driveway lies to the North of Hodges' line, so that the Overtons, defendants, would own part of the circular driveway. Smith contends that the boundary line should run parallel to the northern boundary of Tract "A", which, incidentally, is parallel to the other boundaries of tracts to the North, which derive from a common ancestor in title. Thus, under Smith's contention, the line would pivot to the South on the East end and to the North on the West end from the line as established by Hodges. In further support of this contention, Smith notes that the testimony establishes that there is a house on the Overton property lying two hundred feet North of the Hodges line, and that there is a house on the Smith property lying only fifty feet South of the Hodges line. If the line were pivoted as sought by Smith, the distances between the houses and the boundary line would be more nearly equal.
The Hodges' line gives the respective properties unequal frontages on Plank Road, the Smith property being allotted some one hundred feet more frontage on Plank Road. The testimony establishes that the portions of the respective tracts fronting on Plank Road are the most valuable portions of those tracts. Both properties are allotted equal acreages. The Overtons contend that the frontages on Plank Road should be equal as well as the acreages. (The Hodges' line establishes equal acreages.) It will be noted that Hodges testified that when he ran the 1973 line he attempted as nearly as possible to award equal frontage and equal acreage, while respecting the possession of the properties as nearly as possible at the same time.
The Overtons' argument that precisely equal frontages should be awarded the two properties on Plank Road overlooks the fact that the Overtons' title incorporates the 1973 survey, the plat of which is annexed to the instrument by which they acquired their property from Mrs. Haynes. That survey, as is evidenced from the plat, awards Mrs. Haynes' tract, which was conveyed to the Overtons, about 100 feet less frontage on Plank Road. In seeking to have the line on Plank Road moved to the South, the Overtons defy their own title, and seek to own frontage property that was not conveyed to them. We find the Overtons' claim is limited by their title, and deem it unnecessary to give further consideration to their answer to the present appeal.
The circular driveway which lies partly to the North of the Hodges' line was in use for less than thirty years, but for well over ten years, Smith having used the circular driveway since shortly after he acquired the property in 1951. Smith, therefore, contends *876 that he has acquired land up to a line north of the circular driveway by ten years' acquisitive prescription. See LSA-C.C. art. 3478.
A concursus proceeding involving a similarly indefinite boundary in the title description and a claim of ten years good faith acquisitive prescription arose in Pure Oil Company v. Skinner, 284 So.2d 608 (La. App. 3d Cir. 1973), reversed on grounds not here pertinent, 294 So.2d 797 (La.1974). In that case, the party claiming acquisitive prescription held under a title deed dating from 1880 which conveyed "1½ acres situated in the SE corner of the SW¼ of the NW ¼ Sec. 32, T. 19 North, R. 3 West" without further location of bounds. In that case, it was held 10 years' acquisitive prescription never commenced to run, as the description in the deed was insufficient to permit identification of the property. Similarly, in the present case, the description of the Smith property as the South One-half of an irregularly shaped tract was insufficient to constitute a basis to commence the running of 10 years' acquisitive prescription. That description did not put the world at large, or the ancestor in title of the Overtons, on notice that Smith owned or possessed, to a definite boundary, north of the circular drive or otherwise. Furthermore, Smith concedes that for the circular drive to be included in his tract, the Hodges' boundary would have to be pivoted to the South on its eastern end. Yet, Hodges ran his line from a fence post put up by Smith on the East. Smith thus never put the Overtons, their ancestors in title, or the world, on notice for a period of 10 years that he possessed to a definite line North of the circular drive under definite title. Both the possession and the title were uncertain and indefinite as to the precise extent of title or possession. Possession must be certain for 10 years' acquisitive prescription to apply, as must the property description. See Authement v. Theriot, 292 So.2d 319 (La.App. 1st Cir. 1974) in which the description was held sufficiently definite, but not the possession. Indeed in the present case Smith's complaint is that the boundary which he claims he possessed to was never fixed.
Smith contends that the boundary should be parallel to the northern boundary of the Overtons' tract. Were the entire tract once owned by Haynes Lumber Company to be a tract between parallel lines, perhaps that contention would have merit. However, no two sides of the tract are parallel or of equal dimensions. In such a case, no intention to run the boundary between the two halves parallel to either the North or South bound can be ascertained.
Smith contends that a line farther to the North is established not only by prescription, but by usage, arguing that the driveway and houses lying on the respective tracts would not have been positioned as they were had it not been the intent of the parties to the original deeds out of Haynes Lumber Company that the line would lie to the North of the line later fixed by Hodges. In that regard, LSA-C.C. art. 792 reads as follows:
"The court shall fix the boundary according to the ownership of the parties; if neither party proves ownership, the boundary shall be fixed according to limits established by possession."
Thus, under LSA-C.C. art. 792, the boundary shall be fixed in a boundary action by title or possession, preferably title. There is only one exception to this rule, or perhaps explanation of the rule as it relates to possession, LSA-C.C. art. 794:
"When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land then their title called for, the boundary shall be fixed along these bounds."
That article is inapplicable, because as we have seen prescription does not apply.
*877 The Civil Code places great weight upon titles. LSA-C.C. art. 793 reads as follows:
"When both parties rely on titles only, the boundary shall be fixed according to titles. When the parties trace their titles to a common author preference shall be given to the more ancient title."
It will be noted that at no point does the Civil Code mention usage as a factor to be considered in determining boundary. However, if usage were considered, Smith's fence post to the Northeast would have to be considered as well as Smith's circular drive to the Northwest. If the boundary were run to the North of the circular drive and hence to the fence post, the Overtons would have less acreage than Smith. Smith concedes the parties should have equal acreage. Thus, even if usage applies, the results of usage are, by Smith's own admission, inequitable, as awarding Smith land to the full extent of his usage would give him more than one-half the acreage. However, usage cannot be totally discounted, as the trial court found, and we agree, that to overlook usage in favor of equal frontage could be inequitable, as to do so would take the entire Smith driveway and possibly part of the Smith house.
Smith contends that the boundary as drawn by Hodges was improperly drawn, as Smith was not given notice before the 1973 boundary was drawn by Hodges. Hodges testified he "might have" told Smith of running the boundary. In this regard, Smith cites LSA-C.C. art. 838 as it stood before amendment. However, the trial court in written reasons did not accept the Hodges' line as being authoritative, but rather found that it represented the most nearly equitable fixing of bounds that could be made, the same as if the court itself were drawing the boundary. It then appointed Hodges to run or mark the boundary on the ground. The Hodges' line was accepted not because it was a fait accompli, but because, were the Court called upon to fix the bounds by markers and a plat, in other words, were the court a surveyor, it could not do so more equitably. We agree that the Hodges' line represents the most nearly equitable resolution of the competing interests and considerations that it is possible to reach. We, therefore, affirm the action of the trial court in adopting the Hodges' line.
The trial court appointed Hodges surveyor to fix the line on the ground. This is a purely mechanical act which requires no further policy determinations. Thus, the contention of possible prejudice on the part of Hodges made by Smith is not well taken, as only a mechanical act is required by Hodges. Nor do we believe, having fully read Hodges' testimony in open court, that Hodges is incompetent or incapable of arriving at a just solution, were he called upon to do so.
The general rule is that the fixing of a boundary is of benefit to both parties to a boundary action, and hence the costs should be equally divided. Babin v. Montegut Insurance Agency, Inc., 271 So.2d 642 (La.App. 1st Cir. 1972). In the present case, Smith was ordered to pay two-thirds of the costs and the Overtons one-third. Both parties benefited from the fixing of the boundary, which had never been fixed by boundary agreement or judicial action before. Hence, plaintiff and defendant should bear the costs equally. We, therefore, assess the costs of survey and all other costs equally.
The judgment of the trial court is affirmed, except that the judgment is amended to assess all costs, including costs of the survey, equally between the parties.
AMENDED AND AFFIRMED.
*878 
NOTES
[1] "Haynes Lumber Company" is used herein to refer to Frank Haynes and George D. Haynes d/b/a Haynes Lumber Company and Haynes Lumber Company, a partnership composed of George D. Haynes and Frank Haynes, as the case may be in the individual instruments mentioned herein.
[2] Why Archie McQuirter is joined as a vendor when he was not a vendee in the prior deed from Haynes Lumber Company to James H. McQuirter is not explained.