519 So.2d 379 (1988)
Ezra LOWE and Billy Patrick Lowe, Plaintiffs-Appellees,
v.
Alvin J. JONES and Imogene Rawls Jones, Defendants-Appellants.
No. 19304-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1988.
Rehearing Denied February 18, 1988.
Writ Denied April 7, 1988.
Blackwell, Chambliss, Hobbs & Henry, by Frank N. Chambliss, West Monroe, for Alvin J. Jones and Imogene Rawls *380 Jones, defendants-appellants/plaintiffs-in-reconvention.
Johnny Carl Parkerson, Monroe, for Ezra Lowe and Billy P. Lowe, plaintiffs-appellees/defendants-in-reconvention.
Before HALL, MARVIN and SEXTON, JJ.
SEXTON, Judge.
This is a property dispute between adjoining landowners situated in Bawcomville, on the outskirts of West Monroe, Louisiana. Plaintiffs claimed that in 1985 the defendants illegally erected a five foot high chain metal fence four feet east of the original boundary line and that the fence is located on property to which they acquired title by 30-year acquisitive prescription. Plaintiffs sought the removal of the fence plus damages for disturbance of their peaceful possession and their eviction from this property. The defendants reconvened asserting ownership in the disputed tract and also seeking damages from the original plaintiffs.
The trial court found that the plaintiffs and their ancestors in title continually possessed the portion of defendants' property at issue and thus had acquired ownership of it by thirty years prescription. The trial court further awarded damages to the original plaintiffs in the amount of $4,000, ordered the defendants to remove the fence at their cost, and rejected the reconventional demand of the original defendants.
Defendants appeal asserting that the trial court erred in holding that the plaintiff-appellees and their ancestors in title possessed the disputed strip continually and without interruption with the intent to possess as owners for thirty years. Appellants additionally argue that the damages awarded by the trial court were excessive and that the responsibility for costs should be divided between the parties even if the trial court opinion is affirmed. Appellees answer the appeal requesting an increase in the damage award to $10,000. We reverse in part and amend in part.
Lowe is the record owner of property described as West One-half (W ½) of Lot Two (2) of the Haynes Subdivision of the East One-half of the Northwest Quarter (E ½ of NW ¼) of Section 15, Township 17 North, Range 3 East, Ouachita Parish, Louisiana, as per plat of record in Plat Book 4, Page 20 of Ouachita Parish. Jones is the record owner of the East Half (E ½) of the above described lot (Lowe's neighbor to the east). Neither party disputes the record ownership of the other. The dispute concerns the location of the boundary between the two lots.
During the 1930s or 1940s, appellant Jones' ancestor in title, who was his father, and Amos Krepps, an ancestor in title of appellee Lowe, agreed to create a cattle lane between the two properties. To do so, they each erected fences some three to four feet back from the ideal boundary. After a stock law ordinance was passed in the 1950s forbidding animals from running on the open range, the fences were allowed to deteriorate. The record is in significant conflict as to when the western (Lowe) fence came down. Members of the Jones family testified that it was not until 1960. On the other hand, the Lowe family testified that the fence did not exist by the late 1950s. The Jones fence was apparently down by the early 1960s with only a small portion remaining which was maintained as a garden fence by the mother of appellant Mr. Jones.
Alaric Jones, Lowe's immediate ancestor in title, purchased the western tract in 1959 and sold it to the Lowes in 1962. During his ownership, he maintained the yard and added a culvert to the eastern driveway of the present Lowe tract which protruded somewhat beyond the original boundary between the properties. After the Lowe family obtained the tract in 1962, they planted trees close to the western Jones cattle fence arguably with the permission of Mr. Jones. At this time, this was all that remained of the fencing that had been part of the cattle lane. A lean-to shed was constructed by Lowe in 1978 near the fence line. In June of 1985, Alvin Jones constructed a fence on what he contended was the original boundary between the parties. The fence encroached upon the lean-to *381 shed, certain trash cans, trees, and tomato plants placed upon the disputed tract by Mr. Lowe. This lawsuit ensued as a result.
This suit was filed on July 1, 1985 seeking injunctive relief to prevent the erection of the fence which is now at the center of the controversy. An amended petition was filed August 9, 1985 asserting that the defendants had disturbed the plaintiffs' possession by erecting a fence on property that plaintiffs had physically possessed for over thirty years. The plaintiffs contend that the fence was four to six feet into their property. Thus, plaintiffs sought to be restored to possession and also claimed damages for trespass. Defendants answered asserting ownership of the contested area, thus conceding plaintiffs' possession of the property in dispute and converting the matter into a petitory action. LSA-C.C.P. Art. 3657.
The trial court found that:
The evidence offered convinces the Court that plaintiffs and their ancestors in title have continuously possessed that portion of defendants' property described above for in excess of thirty (30) years.
The court thus rendered judgment in favor of the plaintiffs decreeing them to be the owners of a strip of property beginning 6.2 feet east of the original property line on the north end, south to a corner fence post located on the survey of Wayne Acree, the court-appointed surveyor, at a point 4.4 feet east of the original property line, then west to the original property line, then north along the original property line to its northerly point then east to the point of beginning. The distance of the southerly point, the fence post, from the northerly point is not stated, but from Mr. Acree's survey, it appears to be approximately 320 feet. Thus, the court rendered judgment decreeing plaintiffs to be the owners of a strip approximately 6.2 feet wide on the north end and 4.4 feet wide on the south end along a distance of approximately 320 feet.[1]
The trial court opinion does not elaborate on its analysis of the record testimony nor does it state the specific legal basis which the court used to resolve the issue. However, it is clear that the basis for the court's opinion is LSA-C.C. Art. 794, which allows a party to obtain more land than that for which his title calls by possessing within visible bounds beyond title limits for thirty years without interruption.
LSA-C.C. Art. 794 reads as follows:
Art. 794. Determination of ownership according to prescription
When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds.
As Comment (a) to this article points out, ownership by prescription eclipses ownership by title. Since the plaintiffs' claim to the tract at issue is based on Article 794 of the Civil Code through acquisitive prescription, the burden of proof rests with them. Rogers v. Haughton Timber Company, Inc., 503 So.2d 1079 (La.App.2d Cir.1987); Levatino v. Williams, 396 So.2d 380 (La.App.1st Cir. 1981). The question of uninterrupted possession for thirty years is a factual one which is not to be disturbed on appeal absent manifest error. Hinton v. Weaver, 430 So.2d 134 (La.App.2d Cir.1983). Obviously, these plaintiffs have not been on the property the requisite thirty years, having first acquired it in 1962. However, they may obtain the necessary thirty years possession under LSA-C.C. Art. 794 by "tacking" the possession of ancestors in title. Brown v. Wood, 451 So.2d 569 (La.App.2d Cir.1984), writ denied, 452 So.2d 1176 (La. 1984).
As defendant erected the fence at issue on or about June 30, 1985, plaintiffs' possession *382 has amounted to twenty-three years. They thus must prove the requisite possession for seven additional years.
Alaric Jones, the defendant's brother, owned the Lowe tract for three years prior to Lowe from 1959 to 1962. Lowe obtained the property from Edward R. Hall who owned the property from August 25, 1959 to September 3, 1959, having obtained it from Amos Krepps, whom it will be recalled was the party erecting the cattle lane fence in conjunction with the defendant Mr. Jones' father sometime during the 1940s.[2]
As we have noted, the cattle lane was constructed during the 1930s or 1940s and maintained until the passage of a stock law sometime in the 1950s. Obviously, it is from this point that the fences were allowed to deteriorate and it became possible for plaintiffs' ancestors in title to possess the property at issue. To acquire possession, one must not only take corporeal or actual possession of the thing but must also intend to possess as owner. Former LSA-C.C. Art. 3436.[3] In other words, any use of the cattle lane as such does not satisfy the requirements of possession as it is precarious possession. Former LSA-C. C. Arts. 3426, 3433.[4] Furthermore, precarious possession is presumed throughout the period of the precarious possessor's contention. Former LSA-C.C. Arts. 3446, 3489.[5] Therefore, it is only at some point after the cattle lane fell into disuse subsequent to the passage of the stock law that the plaintiffs can begin to acquire by thirty year prescription.
However, the record is not clear as to exactly when that law was passed. If the stock law was passed subsequent to 1955, the thirty year prescription upon which plaintiffs rely could not possibly have occurred. In this regard, since LSA-C.C. Art. 794 requires that the possession be to visible bounds, the western or Lowe fence must have been down to allow Krepps to even begin to possess to the other fence as owner. We have previously indicated the evidentiary conflict in these respects and must presume, since the trial court found in favor of plaintiffs, that the court must have found that the stock law was passed prior to 1955[6] and that the Lowe fence was down by that time.
For the possession of Mr. Krepps to avail the plaintiffs, his possession must not have been clandestine. Former LSA-C.C. Arts. 3487, 3491, 3500.[7] Moreover, because any initial possession by Krepps of the defendants' side of the cattle lane, the property in dispute, was begun with the permission of the defendants' ancestor and is thus precarious, Krepps cannot begin to possess for himself without giving notice of his intent. Former LSA-C.C. Arts. 3510-3512, 3515(3).[8]
We determine that these longstanding principles of possession are fatal to the plaintiffs' position. While we must presume that the trial judge found that the stock law was passed before 1955, the record is insufficient to allow plaintiffs to tack the necessary period of time during which Mr. Krepps owned the property. There is simply no evidence whatsoever as to the nature of Mr. Krepps' use of the *383 disputed strip during the necessary period and thus nothing upon which to determine, even implicitly, that Krepps did anything as a previous precarious possessor to manifest an intent to possess as ownermuch less that Krepps did anything to give notice that he was possessing as owner.[9] Thus, it is our determination that the trial court's implicit finding for plaintiffs in this regard is clearly wrong.
As counsel for the plaintiffs discusses in brief, there is a great deal of evidence about the fences. Indeed, there was testimony that only a single fence had been there from at least about 1950. There was also Mr. Lowe's testimony that he was told by James Jones, Sr., father of the defendant Mr. Jones, that the fence was the property line. However, this evidence is insufficient. Simply stated, plaintiffs have the burden of proving that after the western/Lowe/Krepps lane fence came down, Krepps, as a precarious possessor, gave notice to his neighbor that he was possessing the former lane area as owner. Apparently, as we have noted, the trial judge determined that only the eastern fence existed from 1955 forward, and there is evidence to support that determination. The only other evidence arguably supportive of plaintiffs' position is Mr. Lowe's self-serving testimony that he was told by Mr. Jones, Sr. that the fence line was the property line. There is no other evidence in the record supportive of plaintiffs' burden. Thus, the record does not support a determination that plaintiffs proved that the former precarious possessor Krepps gave notice that he was possessing the area at issue as owner. The implicit finding to the contrary is clearly wrong.
For these reasons, it is necessary that we reverse the judgment of the trial court decreeing the strip of property at issue to belong to the plaintiffs and that there be judgment showing the original defendants and plaintiffs-in-reconvention to be the owners of that strip.
The defendants have also complained about the trial court award of damages. The trial court viewed the damages as "nominal" and rendered judgment for $4,000. The plaintiffs were obviously in possession of the property at the time the defendants erected the fence giving rise to this lawsuit. Defendants thereby trespassed upon the possession of the plaintiffs. Patin v. Stockstill, 315 So.2d 868 (La.App.1st Cir.1975). Such a trespass, even by the owner, is actionable. Manzanares v. Meche, 506 So.2d 957 (La.App.3rd Cir.1987), writ denied, 508 So.2d 822 (La. 1987); Garrett v. Martin Timber Company, Inc., 391 So.2d 928 (La.App.2d Cir. 1981), writ denied, 397 So.2d 804 (La.1981); Loeblich v. Garnier, 113 So.2d 95 (La. App.1st Cir.1959).
Nevertheless, in this case we find the award of $4,000 indeed excessive. The plaintiff has failed to demonstrate that the damage he sustained was other than minimal. Clearly, however, the Lowes have suffered some inconvenience and anguish as a result of the trespass. Considering the extent of the trespass which we previously articulated herein, we determine that an award of $1,000 for the damages incurred by the plaintiffs is the highest amount which we can affirm, and we reduce the award to that sum.
Defendant-appellants finally argue that the trial court was in error in failing to assess costs equally. Indeed, the Joneses have been successful in having the trial court judgment overturned, as the parties are placed in substantially equal positions with respect to the boundary. The general *384 rule is that the fixing of a boundary is of benefit to both parties to the action and hence the costs should be shared. Nugent v. Franks, 471 So.2d 816 (La.App.2d Cir. 1985); Deshotel v. Lachney, 465 So.2d 974 (La.App.3rd Cir.1985); Smith v. Overton, 417 So.2d 872 (La.App.1st Cir.1982). On the other hand, the Lowes have maintained their recovery for trespass. Under these circumstances, we therefore determine that the costs herein should be divided equally between the parties.

DECREE
For the reasons aforesaid, the judgment herein is hereby recast as follows.
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiffs-in-reconvention, Alvin J. Jones and Imogene Rawls Jones, and against the defendants-in-reconvention, Erza Lowe and Billy Patrick Lowe, decreeing that plaintiffs-in-reconvention are the owners of the property in dispute and plaintiffs' demands against the defendants in this regard are rejected, said disputed strip of land being shown on the survey of Wayne Acree of record in these proceedings, and made a part of this judgment by reference, and being generally described as follows:
Beginning at a point six and two tenths (6.2) feet East of the line dividing the East one-half (E ½) and West one-half (W ½) of Lot two (2), G.B. Haynes subdivision of the East one-half (E ½) of the Northwest one quarter (NW ¼), Section fifteen (Sec. 15), Township seventeen North (T17N), Range three East (R3E), Ouachita Parish, Louisiana, as said line is shown on the Wayne Acree survey, thence South to the corner post hole of an old fence shown on the Wayne Acree Plat, said post hold being four and four-tenths (4.4) feet East of the line shown to divide lot two (2), thence in a Westerly line to the line shown to divide lot two (2), thence Northerly along the line shown to divide lot two (2), to the North line of the subdivision (Bawcom Street), thence Easterly along Bawcom Street six and two-tenths (6.2) feet to the point of beginning.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the judgment of damages in favor of plaintiffs, Ezra Lowe and Billy Patrick Lowe, and against defendants, Alvin J. Jones and Imogene Rawls Jones, originally in the sum of Four Thousand and No/100 ($4,000.00) Dollars be amended and reduced to the sum of One Thousand and No/100 ($1,000.00) Dollars, and is awarded with legal interest thereon from the date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the fee of the surveyors be paid by the respective parties who employed them, except the expert witness fees of Wayne Acree and Don Antley, surveyors, are fixed at One Hundred and No/100 ($100.00) Dollars each and taxed as costs herein.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the costs of these proceedings be borne equally by the parties.
JUDGMENT REVERSED IN PART, AMENDED IN PART AND RECAST.

ON APPLICATION FOR REHEARING
Before FRED W. JONES, Jr., SEXTON, HALL, MARVIN and NORRIS, JJ.
Rehearing denied.
NOTES
[1] The Acree survey in evidence shows the total distance of the ideal boundary line between the Lowe and Jones property to be 633.42 feet. The fence post used by the trial court to set the southern point of the boundary line appears to be just south of the half-way point. Thus, it appears that the tract awarded is approximately 320 feet long.
[2] Hall, a resident of Denver, Colorado, was Krepps' universal legatee. As such, the possession he obtained was the same type as that of his predecessor, LSA-C.C. Art. 942, which he maintained civilly unless dispossessed. Former LSA-C.C. Arts. 3429, 3442, 3443, XXXX-XXXX. Thus, Hall obtained the same possession as his predecessor Krepps, and Hall's possession does not represent a break in corporeal possession if indeed Krepps enjoyed corporeal possession.
[3] This article and the others cited hereinafter with respect to possession were changed effective January 1, 1983 by virtue of Act No. 187 of 1982 which revised Titles XXIII and XXIV of the Civil Code dealing with occupancy, possession and prescription. The comments to each article cited throughout this opinion indicate that the law has not been changed with respect to any of the cited articles. This article is now LSA-C.C. Art. 3424.
[4] Replaced by LSA-C.C. Art. 3437.
[5] Replaced by LSA-C.C. Art. 3438.
[6] There is indeed some evidence indicating that it was passed in the early 1950s.
[7] Replaced by LSA-C.C. Art. 3435.
[8] Replaced by LSA-C.C. Arts. 3439, 3477 and 3478.
[9] The wording of LSA-C.C. Arts 3439 and 3478 and the comments thereto currently seem to make a distinction between the caliber of notice required by a co-owner who is a precarious possessor (requiring overt and unambiguous acts) and the notice given by any other precarious possessor (actual notice). Thus, it appears that the notice currently required of a precarious possessor who is not a co-owner is of a more stringent nature than that imposed on a co-owner. (But see Comment, Civil Law PropertyA Survey of the 1982 Revision of the Louisiana Civil Code Articles on Possession and Prescription, 58 Tul.L.Rev. 573 (1983) at 588.) However, the precise quality of the notice required under the previous law by a precarious possessor who was not a co-owner is unimportant because this record is so devoid of any proof in this regard.