541 So.2d 950 (1989)
Wamul R. OWENS, et ux., Plaintiffs-Appellees,
v.
Micktric R. SMITH, et al., Defendants-Appellants.
No. 20344-CA.
Court of Appeal of Louisiana, Second Circuit.
March 29, 1989.
*951 Blaine Adkins, West Monroe, for defendants-appellants.
Boles, Boles & Ryan by Charles H. Ryan, Monroe, for plaintiffs-appellees.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
SEXTON, Judge.
This appeal arises as the result of a petitory action and petition for damages against the defendants. Defendants appeal the adverse judgment that recognized plaintiffs as owners of the tract in dispute and awarded $1,250 in damages. We affirm.
The land in dispute is located in Bawcomville, on the outskirts of West Monroe, Louisiana. Plaintiff, Wamul R. Owens, is the record owner of what can be generally described as the western half of property described as Lot 1 of G.B. Haynes Subdivision. Defendant, Micktric R. Smith, is the record owner of the eastern half of Lot 1 of G.B. Haynes Subdivision. Neither party disputes the record ownership of the other. The dispute concerns the location of the boundary between the two lots.
The pertinent history of the western half tract, as revealed by the record, indicates that plaintiff, Wamul Owens, acquired his property by deed dated March 25, 1958 from Robert Anderson Murphy. Murphy resided on the property from 1943 to 1958.
The eastern half of Lot 1 was acquired by defendant's father from Clifton Coon, who lived on the property from 1944 until his house burned in 1952. The Coons sold the property to defendant's father in February, 1980. After the fire in 1952, the Coons ceased to live on the property.
The record reveals that at some point in the history of the property a fence existed which was recognized as the property line between the lots. In 1982, Mr. Smith, the defendant, erected a fence which he testified was located four feet west of the old fence line.
Plaintiffs instituted this proceeding as a petitory action and petitioned for damages against the Smiths as a result of the alleged encroachment of the new fence upon their property. The defendant reconvened seeking to be recognized as owner of the disputed property by virtue of 30 years acquisitive prescription and alternatively pursuant to LSA-C.C. Art. 792.[1] The trial court rendered judgment recognizing the plaintiffs as legal owners of the tract, ordering defendants to surrender possession *952 to plaintiffs, rejecting the reconventional demands of defendants, and awarding damages to the plaintiffs in the amount of $1,250.
The trial court awarded the plaintiffs ownership of the property in question based upon LSA-C.C. Art. 794, which reads as follows:
Art. 794. Determination of ownership according to prescription
When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds.
Comment (a) to this article points out that ownership by prescription eclipses ownership by title. The party seeking title to a tract through acquisitive prescription bears the burden of proof. Rogers v. Haughton Timber Company, Inc., 503 So. 2d 1079 (La.App. 2d Cir.1987); Lowe v. Jones, 519 So.2d 379 (La.App. 2d Cir.1988), writ denied, 522 So.2d 1097 (La.1988); Levatino v. Williams, 396 So.2d 380 (La.App. 1st Cir.1981). The question of uninterrupted possession for 30 years is a factual one which is not to be disturbed on appeal absent manifest error. Hinton v. Weaver, 430 So.2d 134 (La.App. 2d Cir.1983); Lowe v. Jones, supra.
The defendants have not been on the property the requisite 30 years, having acquired it in 1980. However, they may obtain the necessary thirty years possession under LSA-C.C. Art. 794 by "tacking" the possession of ancestors in title. Lowe v. Jones, supra; Brown v. Wood, 451 So.2d 569 (La.App. 2d Cir.1984), writ denied, 452 So.2d 1176 (La.1984).
Defendants moved to the property in 1980. Their possession has amounted to six years as this action was filed in 1986. They thus must prove the requisite possession of their ancestors for 24 additional years.
The testimony at trial consisted of the testimony of plaintiff Wamul Owens who testified that he owns the westerly tract and rents out the white house located on the parcel. He testified that the disputed area was "grown up" at the time he purchased it in 1958. Over the years, the grown-up area between the properties was a "buffer zone." He testified that there was nothing done on the property from the time the Coons moved in 1952 until the instant dispute. Around the time of the dispute, he cleared his property and found "all types of junk" in the weeds, but there was no fence or remnants of a fence that he noticed.
Doretha Evans, a tenant of Mr. Owens, testified that she rented the white house from Owens for six and one-half years during 1979 to 1986. She testified that during the time she lived there, she saw "nothing but weeds" and never saw a fence. She did note on cross-examination that she and her husband explored the disputed area but didn't go all the way through the weeds because they were too thick.
The testimony of William Burke, also a tenant on the Owens' property in 1974, was that the weeds in the disputed area were likened to a "jungle." He testified that he did explore the area but didn't see anything resembling a fence. He, too, on cross-examination noted that he did not go all of the way through the growth.
The testimony of Robert Murphy who owned the property before Wamul Owens, revealed that there was an old fence and that the parties "called it the property line." When questioned as to whether or not the new fence (constructed by the defendant) is exactly where the old fence line was, he said he believed that the new fence is somewhat "off." He testified that when the Coons purchased the adjoining property, no one questioned the property line. After the Coon house burned in 1952, he noted that none of the family did anything on the property. He testified that both sides of the fence were clean when he bought the property in 1958 and he took *953 care of the fence. However, he did note that much growth took place after 1958.
Mack Owens, Sr., father of the plaintiff, testified that he did not notice a fence in the 1960s. He noted that he picked blackberries on one occasion and didn't see a fence in the 1960s. He, however, remembered that there was a fence in 1947.
The testimony of Clifton Coon, the owner of the eastern half of property before the defendant Smith, testified that there was an old fence line in the back of the property. He said that the fence stood there when he moved but that he could not compare the new fence location to the old fence location. On cross-examination he testified that the property "growed up" after his family moved.
The testimony of M.R. Smith, Micktric Smith's father, was that his family cleared their tract after they bought it and they did not do anything with the pre-existing fence. He testified that there were a few fence posts remaining and that one could tell it was a fence at the time the new fence was built.
Effie Smith, wife of M.R. Smith, testified that there was an old fence when the land was cleared and that this old fence was still visible.
Micktric Smith testified that there was a fence when the family purchased the property from the Coons. He said the old fence remained intact until the Owens cleared it up and the new fence was placed on the property.
Janice Smith, wife of Micktric Smith, testified that she did all of the garden work, and a fence existed prior to the erection of the present fence. She said the fence "had seen its better days," but it was still a continuous fence. The fence had been squashed down in some spots, and it was generally in poor shape. The old fence remained until Mr. Owens moved his trailers and cleared the lot sometime in 1985.
The trial court found that the defendants failed to prove the requisite 30 years prescription within a visible boundary. Implicit in the court's finding was a determination that the remnants of the fence in question were not sufficient to amount to a visible boundary as contemplated by LSA-C.C. Art. 794. The trial court cited several cases in support of its conclusion. It analogized the present situation to, and placed great emphasis on, the case of Sattler v. Pellichino, 71 So.2d 689 (La.App. 1st Cir. 1954), wherein the remnants of an old fence were found not to be a sufficient visible boundary. In Sattler the fence was a three-stranded regular barbwire fence nailed from tree to tree with some posts between. The fence was maintained and standing up until the time the owner family moved away. Thereafter, it was completely abandoned insofar as any maintenance was concerned. In later years, the only visible remaining part of the fence was "some old strands deeply imbedded in four pine trees and broken off close to the tree along the entire 660 feet of the line." The First Circuit found that these remnants were not a visible boundary sufficient for proof of 30 years prescription.
The trial court also distinguished the present case from Brookshire v. Guidry, 355 So.2d 559 (La.App. 3rd Cir.1967), wherein the Third Circuit found an old fence line to be a sufficient visible boundary. In Brookshire, the defendants tore down the old fence and were sued for damages and restoration of peaceful possession by the plaintiff. The Third Circuit found a sufficient visible boundary based upon the abundant evidence in the case including the testimony of 18 witnesses who testified that a fence existed on the northern boundary of the Brookshire tract for more than 30 years. The fence was described in detail and the witnesses identified the fence as being the property line for the 30 years.
Finally, the trial court distinguished the case of Norton v. Addie, 337 So.2d 432 (La.1976), from the case at hand. In Norton, a fence was built in 1904, replaced in 1923, and maintained by the parties. When the fence was destroyed in 1974, a new fence was built. The Louisiana Supreme Court found that maintenance of the enclosures constituted corporeal possession over the entire tract and was clearly visible and sufficient to give the notice of the plaintiff's possession.
*954 In addition to the cases cited by the trial court, the case of Odom v. Elliott, 452 So.2d 315 (La.App. 2d Cir.1984), provides a further comparison to the case at hand. In Odom, the fence was removed in 1974 but portions of it remained in place. Posts were left standing and some wire was left nailed to trees that had served as fence posts in the fence line. This court held "that although the structural integrity of the fence was substantially obliterated, it retained its viability as a visible wire boundary."
In the instant case, there is evidence that a fence existed at some time in the distant past and was recognized as a boundary between the properties. However, in 1952, after the burning of the Coons' house, they moved off the property. After that time, the fence was not maintained and weeds were allowed to grow on both sides of the property. The independent testimony of individuals who rented property from the Owens indicated that the property consisted of "nothing but weeds," and the parties, although investigating the area, never noticed a fence. The only testimony which indicates that there was a fence with the few posts remaining is the testimony of the Smith family. This testimony at best revealed that there may have been a few posts remaining which were in poor condition. Thus, there is very little indication that the fence was recognizable as a boundary. This fact is substantiated by the testimony of Micktrick Smith that the new fence was built some four feet to the west where they believed the old fence was located, thus indicating either that the Smiths were not certain of where the old fence was located or that the fence was in a serious state of disrepair, if it existed at all.
After reviewing all of the evidence in this case, we cannot find that the trial judge was clearly wrong in his determination that the defendants failed to prove ownership of the property by 30 years prescription. The evidence indicates that the fence, if it existed at all, was in such a serious state of disrepair that it cannot be regarded as a visible boundary within the contemplation of LSA-C.C. Art. 794.[2]
Appellants next contend that the trial court erred in assessing damages against them. They argue that the plaintiffs failed to provide sufficient evidence for proof of damages and additionally that the defendants have demonstrated a right to possession as provided by LSA-C.C. Art. 3422 and have an action in trespass against the plaintiff citing Lowe v. Jones, supra, and Manzanares v. Meche, 506 So.2d 957 (La. App. 3rd Cir.1987), writ denied, 508 So.2d 822 (La.1987). Based upon this jurisprudence, defendants argue that it is "incomprehensible" that damages for trespass could lie against one having a lawful right of possession.
The jurisprudence is clear that one in legal possession of property has an action in trespass even against the owner. Manzanares v. Meche, supra; Lowe v. Jones, supra; Garrett v. Martin Timber Company, Inc., 391 So.2d 928 (La.App. 2d Cir.1981), writ denied, 397 So.2d 804 (La. 1981). This action is predicated upon the disturbance of the one in legal possession. However, the plaintiffs have not disturbed defendants' possession.
On the other hand, there can be no doubt that the act of the defendants in placing this fence on the plaintiffs' property was an act of trespass that continues for as long as the offending object remains. Neyrey General Contractor, Inc. v. Louisiana Power & Light Co., 347 So.2d 266 (La.App. 4th Cir.1977), writ denied, 350 So. 2d 897 (La.1977). Defendants' contention is, however, that one who becomes a possessor to the extent that he has the right to maintain a possessory action is immunized *955 from standing in damages for his act of trespass in taking possession of property.[3] This position is not well taken. It is no defense to an action for damages in trespass that the trespasser has possessed the property for a year. Harvey v. Havard, 287 So.2d 780 (La.1973).
We are unable to say that the nominal award of $1,250 in damages for the instant trespass is excessive. Damages for dispossession are regarded as an award of compensatory damages for violation of a recognized property right and are not confined to proof of actual pecuniary loss. Roge v. Kuhlman, 136 So.2d 819 (La.App. 3rd Cir.1962). Moreover, anguish, humiliation and embarrassment are appropriate considerations. Beasley v. Mouton, 408 So.2d 446 (La.App. 1st Cir.1981).
The defendants' final contention is that it is "unfair and inequitable" for all costs to be assessed against them and argue that the costs should be shared between the parties. As a general rule, the trial court has great discretion in fixing costs, LSA-C.C.P. Art. 1920; Johnson v. Hendrix Manufacturing Company, Inc., 475 So.2d 103 (La.App. 2d Cir.1985), but costs are generally awarded in favor of the party obtaining relief. LSA-C.C.P. Art. 1920. In this cause, the plaintiffs have been successful in their demands against the defendants. There is no aspect of the judgment favorable to the defendants.
For the foregoing reasons, the judgment appealed is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] LSA-C.C. Art. 792 reads as follows:

Art. 792. Fixing of boundary according to ownership or possession
The court shall fix the boundary according to the ownership of the parties; if neither party proves ownership, the boundary shall be fixed according to limits established by possession.
[2] Appellant also argues that the trial court erred in its conclusion that the defendants' ancestors in title failed to possess the property in question. Although the case may present an issue of possession, our reading of LSA-C.C. Art. 794 indicates that a party must prove both possession and a visible boundary in order to demonstrate prescription of 30 years in a boundary action. As we have decided that the fence in question failed to qualify as a visible boundary within the province of LSA-C.C. Art. 794, discussion of the issue of possession is pretermitted.
[3] The fence was erected in 1982 and this petitory action was brought in 1986. There thus can be no doubt that the defendants had been in possession of the property for more than a year.