FRED W. JONES, Jr., Judge.
In this petitory and boundary action among contiguous property owners, Emmett Batson, Cedric Smith, J.D. Simmons and Floyd Jimmerson, three of the owners, Smith, Simmons and Jimmerson, appealed the judgment of the trial court assessing the costs of the action among all of the parties. For the reasons stated herein, we amend the judgment of the trial court.

Issue Presented

Whether the trial court properly assessed the costs of the petitory and boundary action among all of the parties when one party allegedly repeatedly refused to amicably agree to a boundary line and thus should have been assessed with all of the costs.

Factual Context

The record demonstrates that the parties in this action, Emmett Batson, Cedric Smith, Floyd Jimmerson and J.D. Simmons are contiguous property owners of certain property located in Bienville Parish, as shown on the following plat*:
[[Image here]]
On December 12, 1972, Floyd Jimmerson purchased a small tract of property of approximately three acres from Emmett Bat-son. On April 14, 1970, Carroll Driskill purchased a small tract of property from J.D. Simmons, which was later sold to Ce *950 dric Smith on October 10, 1973. It appears Jimmerson wanted to borrow some money and in order to use his property as security, it was necessary to have a survey done to establish the boundary lines and acreage. Smith agreed to the survey. While the survey was being conducted by Rannie Ter-ral, Batson refused on several occasions to allow the survey crew to proceed as he alleged they were on his property.
On October 26, 1978, Emmett Batson filed a possessory action naming as defendants, Floyd Jimmerson, Cedric Smith and Rannie Terral. In his action, Batson alleged he was the possessor and owner of certain property located in Bienville Parish less and except three acres sold to Floyd Jimmerson as per deed dated December 12, 1972. Batson asserted he had possessed the property quietly and without interruption for more than one year prior to a disturbance of his possession by the defendants; that in July, 1978 his possession was disturbed by Terral who was making a survey of the property at the request of Jimmerson; that Terra! -had made several requests to go on his property in order to conduct the survey and on each occasion plaintiff had refused. In August, 1978 Batson observed all of the defendants on his property and found damage to his property after the defendants left. Batson contended that at the time the property was sold to Jimmerson, Jimmerson went on the property and pointed out to plaintiff where he wanted three acres. Together Batson and Jimmerson measured the property which Jimmerson thereafter enclosed in a fence. Batson alleged since Jimmerson had accepted the visible boundary of the fence, he should be equitably estopped from raising the question of boundary.
During the pendency of the action, Ran-nie Terral died and Batson settled with his succession. Floyd Jimmerson contended that at the time of the purchase of the property he did not agree the fence would be the boundary of the three acres but intended to later survey the property to accurately determine the boundaries.
After a trial on the merits, the trial court awarded judgment in favor of Batson recognizing his right to possession of the property extending to the limits of the common fence existing between Batson and Jimmerson and Batson and Smith. The court found the surveyor had placed stakes for the corners of Jimmerson’s and Smith’s property on the larger tract possessed by Batson outside the fences Jimmerson and Smith possessed to. The court ordered Jimmerson and Smith to assert their claim of ownership to the property within 60 days after the date the judgment became executory.
On June 4, 1980 Floyd Jimmerson and Cedric Smith instituted this petitory and boundary action naming as defendant, Emmett Batson. In their petition, plaintiffs alleged Jimmerson had purchased his property from Batson which was bounded on the north and east by Batson’s property. Smith owned property adjoining Jimmer-son’s property. Plaintiffs asserted the property had already been the subject of a possessory action and that a boundary between the property of the parties had never been fixed. Plaintiffs further alleged that at the time the property was deeded by Batson to Jimmerson, the parties agreed Jimmerson would have the right to survey the property and then fence it accordingly. Plaintiffs contended a temporary fence was put around a portion of the Jimmerson property and the parties never agreed this fence would become the boundary. Plaintiffs alleged they had attempted to fix the boundary amicably but the defendant had refused to do so. Plaintiffs requested that a surveyor be appointed by the court and the costs of the proceedings, including the fee of the surveyor, be assessed against defendant.
In response, defendant filed dilatory and peremptory exceptions, including a dilatory exception of non-joinder of a necessary party. Defendant alleged J.D. Simmons was the owner of property immediately south of and contiguous to the lands of the plaintiffs and defendant and a complete adjudication of the boundary action required his presence. This exception was sustained by the trial court, finding that without determining Simmons’ north line there could not be a complete adjudication of the bound *951 aries in a comparatively small area. By amended and supplemental petition, plaintiffs named J.D. Simmons as a defendant in the action.
The testimony at trial established that although the surveyor appointed by the court, Albert Hulett, was appointed to survey the subject property on May 29, 1980, his first survey was not conducted until March 3, 1985 as he was requested to delay the survey in order for the parties to negotiate a possible compromise. He was eventually told that there had been no compromise and it was necessary to proceed with the survey. Hulett later conducted a resurvey of the property on April 16, 1986 to show the old fence line that existed in relation to the ideal boundary line, at the request of Simmons. Simmons paid for this particular survey which was the only survey which reflected the fence line. Hu-lett testified that the cost of the original survey was $6669. Hulett indicated that had the parties been able to reach a compromise it could have reduced the costs of his survey by as much as 75 percent.
Gaylon Simmons, the son of J.D. Simmons, testified that before the court-appointed survey was performed various efforts were made by the parties to agree on a boundary line. Simmons went over the ground with Batson but they were unable to agree on an east-west line.
Batson testified that the parties had several meetings and tried to agree on a boundary line but that the negotiations were unsuccessful. He said he and Jim-merson had reached an agreement on an east-west line but Simmons had refused to accept this particular boundary.
Floyd Jimmerson and Cedric Smith testified that numerous attempts had been made to settle the matter without the necessity of a court-appointed surveyor but Batson had always rejected the proposed agreements. Smith and Jimmerson generally testified they were willing to compromise the boundary as long as they basically retained their footage.
After the trial on the merits, the trial court found the evidence established the possession of Batson to the fence line for a period far exceeding 30 years prior to the filing of both actions, although the other parties had maintained the section line shown on the survey was the common line. The court ordered a survey and the defendant, Simmons, had obtained and filed into evidence another survey which was the only survey that reflected the fence in dispute. The court noted there was a dispute among the parties regarding the payment of the survey costs. Plaintiffs, Jimmerson and Smith, had requested the court-ordered survey for the purpose of establishing governmental lines which they maintained constituted the proper boundaries between their lands and Batson’s. The court found that Batson did not benefit from this survey as it ruled his ownership was not to governmental sections but to the fence lines as situated. Simmons had ordered, obtained and filed into record a survey which accurately reflected both the governmental survey lines and the fence lines which the court had ruled constituted the boundaries between the disputing parties. The court stated although it was customary to assess the party cast in judgment for all costs of court, it would assess Bat-son with paying one-half of the Simmons survey costs. The court held Batson benefited by this survey as it located his entire south boundary, including Jimmerson’s, which he was obligated to identify for Jim-merson as well as all the other parties. The court ordered all other costs would be shared equally by Jimmerson, Smith and Simmons. The court ruled that the boundaries of the Jimmerson property were to be established in accordance with the court-ordered survey and the boundaries of the Smith property, except for the boundary between Smith and Batson, were also to be established in accordance with the court-ordered survey. The boundary between Smith and Batson was established in accordance with the fence line reflected on the Simmons survey.

Legal Principles

La.C.C. Article 790 provides that'the costs of a boundary action are to be assessed as follows:
*952 When the boundary is fixed extrajudi-cially costs are divided equally between the adjoining owners in the absence of contrary agreement. When the boundary is fixed judicially court costs are taxed in accordance with the rules of the Code of Civil Procedure. Expenses of litigation not taxed as court costs are borne by the person who has incurred them.
The Official Comments to this article indicate the provision is based upon Article 663 of the Louisiana Civil Code of 1870 and did not change the law. The comments to the article reveal the jurisprudence is well-settled that the costs incurred in fixing boundaries are to be divided equally between the adjoining proprietors only when there is amicable settlement. In the case of litigation, the costs are apportioned equitably. Therefore, the costs may be borne by a defendant who unjustifiably refuses to cooperate with the plaintiff toward an amicable settlement. The costs may also be assessed to an unsuccessful plaintiff or they may be equally divided between the parties.
La.C.C.P. Article 1920 provides as follows:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
It is well-settled that where there is a bona fide boundary dispute a settlement of which can only be reached by judicial determination, costs should be shared equally by the litigants. The general rule is that the fixing of the boundary is of benefit to both parties to the action and hence those costs should be shared. Exceptions to this general rule are when there is no justiciable dispute and when one party unreasonably refuses to amicably settle the dispute. The assessment of costs is a matter of discretion and the behavior of a defendant may justify taxing him with all of the court costs. Lowe v. Jones, 519 So.2d 379 (La.App.2d Cir.1988), writ denied, 522 So.2d 1097 (La.1988); Miller v. Hebert, 499 So.2d 1087 (La.App.3d Cir.1986); Garnett v. Battistella, 485 So.2d 929 (La.App. 4th Cir.1985), writ denied, 487 So.2d 444 (La.1986); Duay v. Diggins, 485 So.2d 269 (La.App.3d Cir.1986); Fontenot v. Marks, 430 So.2d 810 (La.App.3d Cir.1983), and Kelley v. Stringer, 422 So.2d 189 (La.App.2d Cir.1982), writ denied, 426 So.2d 177 (La.1983).

Assessment of Costs

On appeal, all the appellants essentially argue that Batson should be assessed with all of the costs of the boundary action since he refused to amicably agree to establish a boundary line without having to resort to the use of a court-ordered survey and the resulting expenses. Appellants state that all other parties had agreed to the “give and take” of footage in order to establish a compromise boundary line but this proposal was rejected outright by Batson, thus necessitating the use of the court-ordered survey. Appellants argue the trial court’s judgment on the assessment of costs should be reversed and that all costs should be assessed to Batson in accordance with the well-settled jurisprudence noted above that the costs in fixing boundaries may be assessed to a defendant who unjustifiably refuses to cooperate with plaintiff toward an amicable settlement. In addition, Simmons argues he should not be assessed with any of the costs as the judgment entered by the trial court did not actually resolve any dispute over his boundaries and he did not benefit from either of the surveys.
After reviewing the record, we find that the trial court did not err in the allocation of costs as to Smith, Jimmerson and Batson. The evidence indicates that these property owners had disputed the boundaries to their property from 1978 to 1987, the date of trial. Although the court-appointed survey was delayed in order to allow the parties to negotiate a possible compromise, attempts at settlement proved fruitless as all of the parties were unable to reach a mutually satisfactory agree *953 ment. At trial, Smith and Jimmerson testified that Batson was the party responsible for the failure to reach an amicable agreement. There was also evidence that Simmons had rejected a proposed agreement. However, while the testimony as to the proposed settlements is somewhat confusing, it does not appear that Batson ever refused an offer to fix the boundary at the same location that it was ultimately fixed by the trial court. Although this fact is not absolutely decisive of this issue, it is certainly an important consideration that the trial court did not abuse its wide discretion in apparently finding that Batson was not arbitrary or unreasonable in his rejection of the settlement proposals and thus assessing the costs among all of the parties on this basis. It should also be noted that the fence line Batson asserted was the proper boundary between the parties was ultimately fixed judicially by the court as the proper boundary. After reviewing the testimony and the evidence, we cannot say that Batson unreasonably refused to amicably settle the dispute and thus should be assessed with all costs of the proceedings. As noted above, the trial court is granted wide discretion to tax costs equitably in accordance with the rules of the Code of Civil Procedure and it does not appear the trial court abused its discretion in this case.
It is apparent from the record that Smith, Jimmerson and Batson benefited from the Simmons survey by having the court fix the boundary at a permanently identifiable point as opposed to a temporary structure such as a fence. Thus, it was proper and well within the trial court’s discretion to divide this survey’s costs among these parties.
Further, Smith and Jimmerson argue that Batson should have been ordered to pay all of the costs of the court-appointed survey. However, that survey merely fixed the governmental section lines and did not reflect the fence line which was ultimately determined by the trial court to be the boundary between Smith and Bat-son. As the governmental lines located by that survey did not prove to be the boundary between those properties, it is clear Batson derived no benefit from that survey and thus the trial court did not err in refusing to assess any portion of the costs of that survey to Batson.
Finally, Simmons argues he should not be ordered to pay any of the costs of the proceeding as the judgment of the trial court did not fix any of his boundaries. We agree. As noted previously, Simmons was not initially a party to this action but was joined as a necessary party by order of the court after the filing of the appropriate exception by Batson. Apparently the trial court felt early in the litigation that this boundary dispute in a relatively small area of property might ultimately involve Simmons but this possibility never materialized and the judgment which was rendered in no way fixed or otherwise affected any of Simmons’ boundaries. It appears clear from the record the actual dispute in this case was the fixing of the boundaries between Jimmerson, Batson and Smith with no genuine dispute concerning Simmons. Accordingly, we find that the trial court erred in assessing any portion of the costs of these proceedings to this particular party-
For these reasons, the judgment of the trial court is hereby AMENDED so as to delete the assessment of costs of the pet-itory and boundary action to defendant, J.D. Simmons. The costs of the one-half of the Simmons survey and the full costs of the court-appointed survey are assessed to plaintiffs, Floyd Jimmerson and Cedric Smith, in equal portions. As amended, the judgment is AFFIRMED. Costs of this appeal are assessed to plaintiffs, Jimmer-son and Smith, in equal portions.
ON APPLICATION FOR REHEARING
Before FRED W. JONES, SEXTON, HIGHTOWER, MARVIN and NORRIS, JJ.
Rehearing denied.

 As shown on the plat, "A” was the portion of boundary in dispute and later fixed by the trial court.