430 So.2d 134 (1983)
Walter M. HINTON, Plaintiff-Appellee,
v.
Geneva Sue Terral WEAVER, et al., Defendants-Appellants.
No. 15226-CA.
Court of Appeal of Louisiana, Second Circuit.
March 28, 1983.
Rehearing Denied May 5, 1983.
*135 Johnny E. Dollar, Monroe, for defendants-appellants.
Rabun & Post by David F. Post, Farmerville, for plaintiff-appellee.
Before PRICE, SEXTON and NORRIS, JJ.
SEXTON, Judge.
Plaintiff petitioned the district court to appoint a surveyor to fix the boundary between his property and the contiguous tract owned by defendants, according to the parties' respective titles. Defendants answered, opposing the authorization of a judicial survey, and alleging that a fence line which had separated the properties for several decades had become the legal boundary between the tracts by virtue of 30 years acquisitive prescription. The trial court appointed a surveyor to fix the title boundary and, after trial, rejected defendants' claims of acquisitive prescription and decreed the judicial survey to be legally binding. Defendants appeal the trial court's decree. We affirm.
Plaintiff-appellee in this cause is Walter M. Hinton and defendants-appellants are Geneva Terral and her daughter Geneva Terral Weaver. Plaintiff and defendants derive their ownership from a common ancestor. The property in question is located in Union Parish.
Prior to 1917, Mr. and Mrs. William Terral owned the tracts at issue herein, along with other contiguous properties. After the death of William Terral, his property was partitioned by his heirs in 1917. Among the properties received by each party in this partition were contiguous 40 acre tracts deeded to R.L. Terral and his sister Lizzie Terral Allen. The 40 acre tract received by R.L. Terral was the NW ¼ of the SE ¼ Section 4, Township 19 North, Range 1 East. The 40 acre tract received by Lizzie Terral Allen was immediately to the south of R.L. Terral's tract and constituted the SW ¼ of the SE ¼ of the same section. "[T]he south boundary line of the described forty received by R.L. Terral" was thus, in the words of the trial court, "the north boundary line of the property received by Lizzie Terral Allen."
R.L. Terral conveyed his 40 acre tract to his brother W.F. Terral in 1918; however, in 1945, W.F. Terral reconveyed this same tract of land to R.L. Terral. R.L. Terral subsequently died, and in 1971 the usufruct over his 40 acre tract vested in his widow, Geneva Terral. The naked ownership of his property initially vested, in indivision, in R.L. Terral's nine children. However, through a conventional agreement with her mother and co-heirs, his daughter Geneva Weaver became the naked owner of approximately 9 acres located in the extreme southeast corner of his 40 acre tract.
While the 40 acre tract owned by R.L. Terral was changing hands, a portion of the "forty" owned by Lizzie Terral Allen directly to the south also changed hands. In 1949, Lizzie Allen conveyed to her son-inlaw, Walter Hinton, a parcel of land in the northeast corner of her 40 acre tract.
As a consequence of this series of conveyances, defendants Geneva Weaver and Geneva Terral are the naked owner and usufructuary, respectively, of the 9 acre parcel *136 directly to the north of the tract currently owned by plaintiff Walter Hinton. The parcels belonging to the defendants and plaintiff are immediately adjacent and contiguous, with plaintiff's property forming the southern border of defendants' tract. The "ideal" or title boundary between the tracts owned by the defendants and plaintiff, is the quarter section line which once divided the 40 acre tracts formerly owned by their respective ancestors in title, R.L. Terral and Lizzie Terral Allen. The following diagram approximates the respective positions of these litigants' tracts:

In May and June of 1979, defendants constructed a fence parallel to the common boundary separating the two tracts owned by plaintiff and defendants; however, the fence was constructed some 40 feet south of the ideal boundary on land, which according to title, was owned by the plaintiff, Walter Hinton. On June 19, 1979, Mr. Hinton filed suit against the defendants, praying that the court authorize a judicial fixing of the common boundary. Plaintiff also prayed that the defendants be ordered to remove the aforesaid fence from his property. The defendants answered, alleging that they owned up to the fence that they had constructed by virtue of 30 years acquisitive prescription and that a judicial survey according to title would therefore be superfluous.
On March 6, 1980, the trial court directed licensed surveyor William T. Lowe to locate the ideal or title boundary between the properties of plaintiff and defendants. Mr. Lowe subsequently fixed the title boundary between the parties' tracts, and compiled a proces verbal of the actions taken in locating the boundary, and the evidence discovered of use and possession. The accuracy of the title boundary fixed by Mr. Lowe, and the substance of defendants' claims of acquisitive prescription, were tried in June of 1982. The trial court rendered judgment in favor of the plaintiff, dismissing defendants' claims of acquisitive prescription and decreeing that the boundary fixed by William Lowe along the quarter section line was legally binding.
Landowners and usufructuaries have an imprescriptible right to demand the judicial fixing of the boundaries of contiguous lands. LSA-C.C. Arts. 786, 788 and 789. "When both parties rely on titles only, *137 the boundary shall be fixed according to titles." LSA-C.C. Art. 793.
It is a basic principle of civil property law, however, that ownership by prescription eclipses ownership by title. Thus, "When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles." LSA-C.C. Art. 794.
Immovable property may be acquired through 30 years acquisitive prescription without good faith or just title. LSA-C.C. Arts. 3475, 3499. This mode of ownership acquisition is based upon the possession of the property at issue for 30 years, which possession, to be legally binding, must consist of both physical possession, and the intent to possess as owner. LSA-C.C. Arts. 3499, 3436. The party alleging acquisitive prescription must establish that his possession has been continuous and uninterrupted public and unequivocal, within visible bounds, and under the title ofor with the intent to possess asowner. LSA-C.C. Arts. 794, 3500.
A possessor may achieve the requisite 30 years of possession by adding to his own possession that of any predecessor in title whose possession he attains through universal, particular, lucrative or onerous title, though "to enjoy this advantage, the different possessions must have succeeded each other without interval or interruption." LSA-C.C. Arts. 3495, 3493. Once begun, the possession necessary to commence acquisitive prescription may be preserved by "vestiges of works" and other "external and public" signs. LSA-C.C. Arts. 3501, 3502. However, the operation of acquisitive prescription is limited to that property "actually possessed by the person pleading it." LSA-C.C. Art. 3503.
The trial judge, in exhaustive reasons for judgment, reviewed the facts pertinent to the resolution of the case as follows:
"Prior to the time that the acts of sale were executed in 1917 to partition the `Terral Property' Lizzie Terral Allen took possession of the eighty (80) acres she would acquire by virtue of the act of sale or partition. A fence was constructed by the Allens that would separate the property, or at least a 40-acres, of R.L. Terral from the property of Lizzie Terral Allen. The Allens farmed their eighty (80) acres and apparently used a large part for row crops and utilized a portion for pasture.
"Louisiana Highway No. 15 was constructed about the year 1926. It was Mrs. Allen's testimony that at the time the road was constructed the fence that her husband had constructed which was east of the road and on the north boundary of the SW ¼ of the SE ¼ was taken down and the wire was used to enclose, as a pasture, property that was owned on the west side of the new highway.
"The testimony of Mrs. Allen indicated that perhaps a portion of the fence that had been constructed by her husband on the north boundary line of her eighty (80) acres and east of the highway was left where it had been built.
"There is considerable testimony in the record relative to a rent house that was constructed by R.L. Terral that was located near the south boundary of his property. The rent house was in fact located south of the ideal boundary between the property of plaintiff and defendant. The evidence is in hopeless conflict as to whether or not there was a fence south of the rent house during the 1930's and the 1940's. There was testimony by persons who stated that they visited occupants of the rent house and remember that there was a `gap' in the fence. The gap was removed by the visitor to the property and was then placed back in the fence in order to secure the enclosure. There was testimony of witnesses who also went on the property and who testified positively that there was no fence immediately south of the rent house and extending to the Farmerville Highway.
"As mentioned in the beginning, a horse fell in the well at the rent house while R.L. Terral was plowing. The Court is satisfied from the evidence and testimony that the well was in fact located south of the ideal boundary between the properties.
*138 "The defendants testified that there was a fence that extended east from the highway and that joined with what is shown as existing mesh and barbed wire fence on the plat prepared by Lowe and Associates and which is also indicated on the plat as evidence of an older fence. The defendant, Geneva Sue Terral Weaver, testified that she recalled going through the fence when she was a child and was growing up on the property. The testimony of her sister is to the same effect.
"The evidence shows that plaintiff, Walter M. Hinton, acquired the property which is hereinabove described by an act of sale from his mother-in-law in 1949. Plaintiff testified that immediately after acquiring the property or in fact before he actually acquired title, he commenced the construction of the residence that is now on the property and in which he resides. Plaintiff testified that the well that had been at the rent house was there and he asked permission of R.L. Terral to use water from the well. This was done for a short period of time. Plaintiff is positive and unequivocal in his testimony that there was no fence extending east from the road that would be a part of the portion indicated on the plat referred to as evidence of older fence found in trees. It was plaintiff's testimony that he built the existing mesh and barbed wire fence shown on the plat and that this was constructed in order to enclose a portion of his property that would be east and south of his house.
"It is not clear from the evidence and testimony when the Terral rent house was demolished. However, the rent house has not existed on the property in a number of years.
"In the 1960's, Walter M. Hinton was elected to serve on the Union Parish Police Jury. In connection with the discharge of his duties as a police juror, certain road equipment was to be kept at his residence in order that it would be safe when it was not being used for road work. At this time, plaintiff went to R.L. Terral and asked permission to park the machinery on his property which would be north of the property owned by plaintiff. Mr. Terral granted the permission and native gravel was placed on the ground and some grading work done on the driveway from Louisiana Highway 15 to the area where the road machinery was parked. An examination on the ground at the time of one of the visits by the Court indicated that there was gravel on the ground north and south of the ideal boundary line as located and staked by the surveyor, William T. Lowe."

* * * * * *
"There is a considerable conflict in the record as to whether or not the property of R.L. Terral which was east of the Farmerville-Monroe Highway and south of the Point Road and being the property now owned by Geneva Sue Terral Weaver, was actually enclosed by a fence. There were a number of witnesses who testified concerning whether or not a fence was located adjacent to and parallel to the east right-of-way of the highway. This testimony is in hopeless conflict. There was testimony that it was utilized party as a pasture. However, there is other testimony that different parts of it were actually cultivated at different times by R.L. Terral.
"There is considerable testimony in the record as to the type and location of fences west of Louisiana Highway No. 15. This testimony was sought to be developed to show that there was or was not in fact a `boundary fence' which was east of the road and to show that it extended then west of the road. A great deal of testimony was developed relating to fences west of the road. The Court walked a considerable distance on the west side of the road and observed all of the fences that had been testified to or otherwise noted by the parties. The surveyor, William T. Lowe, and an expert witness for the plaintiff examined the fences west of the road. Basically, the testimony of Willaim T. Lowe was that he could not `develop' a fence on the west side of the road that could be considered as a boundary fence. His testimony was that the fences seemed to indicate they were erected for `land use' rather than being indicative of boundary.
*139 "The defendant called as an expert, Dr. Milton B. Newton. Dr. Newton is a professor of Geography at Louisiana State University. Dr. Newton made an examination on the ground and also made a study and correlation of aerial photographs. From his study on the ground and from the aerial photos, Dr. Newton prepared a plat which indicates the manner and approximate location of different monuments that actually demonstrate the manner and extent of use of the contiguous tracts."
As we have previously indicated, plaintiff's claim is based on LSA-C.C. Art. 794.[1] The plaintiff must therefore prove (1) that there were visible bounds enclosing the property, (2) that he had open physical possession of the property as owner to these visible bounds, and (3) that his possession was continuous and uninterrupted for a period of 30 years. Leblanc v. Laborde, 368 So.2d 1126 (La.App. 3d Cir.1979).
In considering whether or not plaintiff had established these requisites the trial court found:
"First, the Court is not satisfied that the fences that were testified to were in fact visible `boundaries'. It seems more plausible in considering all the evidence that the existing mesh and barbed wire fence and the old fence east of the road where the wire was in the ground were actually fences constructed to accomodate (sic) the person in the use of the land rather than as a boundary.
"Also, the evidence does not show that defendants, R.L. Terral and W.F. Terral were in physical possession to the visible boundary, even assuming the fence or fences existed and were boundary fences. No doubt plaintiff used property north of the fence as police juror and also farmed a portion of the property. Prior to acquisition of title by Mrs. Weaver no serious consideration was given by the parties as to the exact location of the boundary between them.
"Further, the testimony of the witnesses and all of the evidence seems clear to the Court to show that there was not continuous and uninterrupted possession to the visible boundary for a period of thirty (30) years. All of the witnesses testified that the fence was moved. Mrs. [Hinton] places the removal of the fence as early as 1926 when the highway was constructed. Other witnesses testified that the fence was removed when Mrs. Allen started driving a school bus in 1950. There were other witnesses that said it was removed when the police jury equipment was parked on the disputed property and perhaps north of it. The Court has carefully tried to analyze any period of time since the partition of the Terral property in 1917 to see if there could be any thirty (30) year period where defendants and their ancestors could have been considered in continuous and uninterrupted possession of the property. The Court has been unable to find, from the evidence offered, any period of thirty (30) years when the defendants and their ancestors in title were in continuous and uninterrupted possession of the disputed property to the visible boundary."
The factual determination at issue is whether a fence located south of the ideal boundary separated the parties' tracts for 30 years and without interruption. We cannot say from our review of the record that the findings of the trial court were clearly wrong. There is sufficient evidence in the record to support the trial court's determinations. We therefore may not disturb the judgment of that court. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
There is the additional issue of the trial court's failure to consider the testimony of its expert geographer Dr. Milton Newton with respect to certain aerial photographs. This testimony is corroborative of defendant's position in several respects. However, even if that testimony is considered, in our view there is nevertheless ample basis in the record for the findings of the trial court.
*140 The judgment of the trial court is therefore affirmed with the costs of this appeal assessed to appellant.
AFFIRMED.
NOTES
[1] The source of this article is Act 169 of 1977 which is basically the old Article 852, and effects no change in the law so far as this case is concerned. See Fruge v. Lyons, 373 So.2d 220 (La.App. 3d Cir.1979).