503 So.2d 1079 (1987)
Paul Carter ROGERS, et al., Plaintiffs-Appellees,
v.
HAUGHTON TIMBER COMPANY, INC., Defendant-Appellant.
No. 18,471-CA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1987.
Roland V. McKneely, Bossier City, L. Charles Minifield, Minden, for defendant-appellant.
Brocato & Hiller by C.P. Brocato, Shreveport, for plaintiffs-appellees.
Before MARVIN, SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiffs, record owners in indivision of a 20.5 acre tract of land in Bossier Parish, sued the defendant, Haughton Timber Company, for wrongful entry on their property and the wrongful cutting of their timber. Haughton Timber filed a third party demand against James Allen, claiming that Allen represented himself to be the owner of the property and gave Haughton Timber a deed to the timber on the property. Allen filed a cross claim against the original plaintiffs claiming to be the owner of the property by virtue of thirty year acquisitive prescription.
The trial court ruled against Allen and declared the original plaintiffs to be the owners of the disputed property. Accordingly, the trial court awarded the plaintiffs $8,897 in damages against Haughton Timber, together with legal interest and costs, and awarded Haughton Timber a judgment against James Allen for the same amount. *1080 Allen appealed the trial court judgment. We affirm.

FACTS
The plaintiffs in this lawsuit are the heirs to the Murff Estate and the owners of numerous pieces of property in Bossier Parish. On September 27, 1982, this suit was filed against Haughton Timber by Paul Carter Rogers, individually and as agent for his co-heirs, John Pickett Rogers, III, Thomas Murff Rogers, S.C. Rogers, Mercer C. Rogers, Bernice Murff, Mary Mercer Murff Crichton, Jacqueline Murff Pringle, Alton Leon Pickard, Jr., William R. Pickard, David H. Lawrence, Wilson M. Lawrence, Richard B. Lawrence, Catherine E. Lawrence Beckham, Margorie Gray Lawrence, Mary Audrey Lawrence Snelling, Andrew B. Lawrence, Jr., Andretta K. Lawrence Relph, Robbie Lou Lawrence Rushing Pettit; Lawrence Andrew Sheppard, individually and as agent for Julius K. Sheppard, Frank C. Sheppard, Nancy K. Sheppard, James M. Sheppard; and Thomas T. Sheppard, individually and as agent for Jack M. Sheppard, Jr., Stephen White Sheppard, Mary Audrey Sheppard Niessen.
The plaintiffs claim to be owners in indivision of a 20.5 acre tract of land in Bossier Parish described as follows:
A 20.5 acre tract, more or less, located in the E/2 of E/2 of Section 16, T17N, R11W, Bossier Parish Louisiana, being more particularly described as follows: From the Northeast corner of the E/2 of the SE/4 of said Section 16, being a 1½" drive shaft, run thence West, 410 feet to an old barb wire fence and the point of beginning; thence traversing Southerly along said fence, 1,394.0 feet to a 5/8" iron rod at fence corner at a point on the Easterly right-of-way line of a public road; thence run North 56'37° West along said right-of-way line and old barb wire fence, 697.50 feet to a point of curvature of a curve to the right having a delta = 19°38', radius = 2,323.72 feet; thence run in a Northwesterly direction along said curve of right-of-way line, and old barb wire fence, 796.26 feet to a point of tangency; thence run North 26° 58'50" West along said right-of-way line and old fence, 258.84 feet to a 5/8" iron rod and fence corner; thence traversing in an Easterly direction along an old barb wire fence as follows: North 61° 02' East, 113.30 feet to fence corner; North 72°51' East, 236.4 feet to fence corner; thence traversing a hog wire and barb wire fence as follows: South 26°02' East, 82.80 feet to a 1½" iron pipe and fence corner; South 85°24' East, 175.10 feet; thence leaving fence run North 88°30' East 188.60 feet to an existing 2" iron pipe; thence run North 89°15' East, 355.90 feet to the point of beginning.
In claiming ownership of the property, the original plaintiffs set forth their complete chain of record title from the present back to 1860 when title issued from the State of Louisiana. The parties ultimately stipulated that the original plaintiffs were indeed the record owners of the disputed property.
The evidence showed that in 1928, James Allen moved onto a small tract of land located north of and adjacent to the disputed property and he has lived there since that time.[1] Allen claims to have fenced portions of the disputed property in the 1940's and claims to have used the disputed property as pastureland for his cows and horses through the years. By virtue of these acts, Allen claims to have acquired ownership of the property by thirty year acquisitive prescription.
The original plaintiffs dispute Allen's claim that he has possessed the property as owner for the thirty years required to acquire ownership by prescription. Plaintiffs argue that Allen did not fence the property and did not use it as pasture or cut timber from the property without their permission.
The trial court, in its reasons for judgment, held that Allen did not possess the property as owner. The trial court found that the property was not fully enclosed *1081 until 1958 and that the original plaintiffs, record owners of the property, did everything to maintain possession that could be expected of owners of rural property, such as marking boundaries, employing an overseer, authorizing seismic explorations and cutting timber from the property in the 1950s. The trial court stated that Allen's possession was disturbed in the 1950s by the timber cutting operation and that plaintiffs maintained possession from that time on.
Allen appealed the trial court judgment, claiming the trial court erred in finding that the property was not enclosed until 1958, that the trial court erred in holding that Allen did not prove that he possessed the property as owner without interruption for thirty years, and that the trial court erred in awarding judgment in favor of the original plaintiffs and further erred in granting judgment in favor of Haughton Timber on its third party demand against Allen. The primary issue before this Court is whether James Allen proved ownership of the disputed property by virtue of thirty year acquisitive prescription.

ACQUISITIVE PRESCRIPTION
Acquisitive prescription is a mode of acquiring ownership or other real rights by possession for a period of time. LSA-C.C. Art. 3446. Ownership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith. LSA-C.C. Art. 3486. The possession must be continuous, uninterrupted, peaceable, public and unequivocal. LSA-C.C. Art. 3476; Nugent v. Franks, 471 So.2d 816 (La.App. 2d Cir.1985); Williams v. McEacharn, 464 So.2d 20 (La.App. 2d Cir. 1985); Hoffman v. McKneely, 352 So.2d 260 (La.App. 2d Cir.1977); Pipes v. Pipes, 343 So.2d 329 (La.App. 2d Cir.1977) writ denied 345 So.2d 904 (La.1977). For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed. LSA-C.C. Art. 3487.
The exercise of possession over a thing with the permission of or on behalf of the owner or possessor is precarious possession. LSA-C.C. Art. 3437. Acquisitive prescription does not run in favor of a precarious possessor or his universal successor. LSA-C.C. Art. 3477.
The burden of proof to establish the facts essential to support a plea of thirty year acquisitive prescription rests on the party who makes the plea. Levantino v. Williams, 396 So.2d 380 (La.App. 1st Cir.1981). Whether a party has possessed property for thirty years without interruption is a factual issue which will not be disturbed on appeal absent a showing of abuse of discretion. Hinton v. Weaver, 430 So.2d 134 (La.App. 2d Cir.1983).
Allen's basic contention is that he fenced the disputed property, cut timber from the property and ran livestock on the property for more than thirty years, adversely to the interest of the record owners. The trial court found that Allen failed to carry his burden of proving adverse possession of this property for thirty years. The record indicates that the trial court was correct in this finding. The record supports the trial court's judgment and there is no showing that the trial court was clearly wrong in reaching its decision.
The trial court's decision in this case turns largely on its credibility evaluation of the witnesses. In attempting to prove his claim that he fenced the disputed property, ran livestock on the property and cut timber on the property, Allen presented the testimony of several of his neighbors, some of whom were distantly related to him. The testimony presented on Allen's behalf is far from conclusive or corroborative of his assertion of ownership. Some of the witnesses claim to have seen Allen fence portions of the property in the 1940s and claim to have seen Allen cut firewood from the property. One witness stated that he had seen a white mule belonging to Allen pastured on the disputed property.
Other witnesses testified that they saw Allen's livestock in a small pasture close to his house. The survey of the property indicates there is a small fenced closure on *1082 Tract 2, the property upon which Allen's house is located.
Allen testified he fenced the property in the 1940s and utilized all of the disputed property as pastureland. He testified that he walked the fences around the property once per year to make repairs. He also claimed to have cut timber from the property and asserted that he never received permission from the plaintiffs to carry out these activities.
The original plaintiffs presented testimony indicating that the fence on the eastern line of the property was installed by Hayes Ball, who owned the property to the east of the disputed property. The fence was built in the late 1950s when the parish passed a stock law prohibiting animals from running at large on the open range.
The original plaintiffs also presented the deposition of Herbert J. McClure, who was overseer of the Murffs' estate from 1948 to 1979. McClure stated that he and two assistants blazed and painted the boundary lines around the Murff estate shortly after he became overseer.[2] McClure did not observe any acts of possession by Allen at that time. McClure testified that there was a fence along the north line of the property in 1949, but he did not know who installed it. McClure stated that the State Highway Department installed the fence along the public highway on the southwestern boundary of the property. The fence along the eastern side of the property was erected by Hayes Ball in the late 1950s.
McClure also stated that during his tenure as overseer, he was frequently on the disputed property and he never knew anyone to be in possession of that property adversely to the interest of the Murff heirs.
McClure stated that he gave James Allen permission to run one cow on the property and that on one occasion, when he discovered Allen cutting cross ties on the property, he charged Allen $.20 per tie. McClure also stated that the Murff Estate cut timber from the property in 1956.
S.W. Culpepper became overseer of the property in 1979 and testified that he was frequently on the premises. He testified that he never saw Allen or any of Allen's animals on this property.
The testimony of McClure and Culpepper is corroborated by that of Floyd English, a relative of Hayes Ball, who helped construct the fence on the east line of this property. English stated he had never seen any evidence that Allen kept livestock on the disputed property.
The record contains ample evidence supporting the trial court's determination that Allen failed to carry his burden of proving ownership of the property by virtue of thirty year acquisitive prescription. It is not necessary that Allen show that he personally caused the property to be fenced, only to show that he possessed all of the property to visible boundaries. Cheramie v. Cheramie, 391 So.2d 1126 (La.1980); Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952). Regardless of who fenced the property, Allen failed to show that he possessed the entire disputed tract to its visible boundaries. The possession necessary to acquire by prescription must be open and unequivocal. In this case, Allen has failed to show that he openly possessed the property for the length of time necessary to acquire ownership by prescription. In fact, Allen's limited activities on the property appear to have been undertaken with the permission of the owners, making precarious any possession he may have had of the property.
Also, if Allen had possessed the property adversely to the record owners, that possession was interrupted in 1956 when the record owners cut timber from the disputed property. Even if Allen had fenced the property and began using it in the 1940s, the interruption of possession by the plaintiff's timber cutting operation in 1956 *1083 would defeat his claim of thirty year acquisitive prescription.

CONCLUSION
For the above stated reasons, we affirm the judgment of the trial court granting the original plaintiffs an award of $8,897.00 in damages against Haughton Timber plus costs and legal interest and granting Haughton Timber judgment against James Allen for the same amount. We also affirm the trial court judgment rejecting Allen's claim of ownership of the disputed property by acquisitive prescription and declaring the original plaintiffs and record owners to be the true owners of the property.
AFFIRMED.
NOTES
[1] A copy of the survey of Sammie L. Craft, Registered Surveyor, dated July 1, 1981, is attached hereto as an Appendix. The disputed property is represented on the survey as Tract 1. The property upon which Allen has lived since 1928 is shown as Tract 2.
[2] We recognize that marking a boundary line alone is insufficient to establish possession. The present case is distinguishable from our recent case of Mcllwain v. Manville Forest Products Corporation, 449 So.2d 1138 (La.App. 2d Cir.1986). In Mcllwain, the painting of boundary lines was the sole activity carried out by the record owners in claiming possession. Under the jurisprudence, we found such activity to be insufficient to maintain possession.