589 So.2d 598 (1991)
Henry Wallace LIVINGSTON, et al., Plaintiffs-Appellants,
v.
The UNOPENED SUCCESSION OF DIXON, et al., Defendants-Appellees.
No. 22964-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1991.
*599 Tommy Cooper, Jr., Rayville, for plaintiffs-appellants.
William R. Coenen, Rayville, for defendants-appellees.
Before NORRIS, LINDSAY and BROWN, JJ.
LINDSAY, Judge.
The plaintiffs, Henry Wallace Livingston and Doyle Rogers, Sr. appeal from a trial court judgment in favor of the defendants, the unopened succession of J.I. Dixon, Samie Charles Davis, Shirley Dixon Davis, Mrs. J.I. Dixon, James E. Dixon and Nancy Dixon, finding that the defendants had established ownership by 30-years acquisitive prescription of a strip of land located along the east/west boundary of the property *600 owned by the plaintiffs and defendants. We affirm the trial court judgment.

FACTS
The plaintiffs, Henry Wallace Livingston and Doyle Rogers, Sr., are owners in indivision of all of Section 13, Township 17 N, Range 8 E, in Richland Parish. Livingston and Rogers obtained title to this property in 1961.
In 1944, the late J.I. "Sonny" Dixon acquired property adjacent to and east of the plaintiff's property in Section 18, Township 17 N, Range 9 E, in Richland Parish, comprising approximately eighty acres. Mr. Dixon died in the late 1960s and his succession was never opened. His heirs, Mrs. J.I. Dixon, James E. Dixon, Nancy Dixon, Shirley Dixon Davis and Samie Charles Davis are the defendants in the present action[1].
The plaintiffs claim that when they purchased the property in 1961, they discussed with J.I. Dixon that a fence separating the properties was not on the survey line and encroached on the plaintiffs' property. They claim that Mr. Dixon acknowledged this fact and that the parties talked about having a survey made[2]. The relationship of the plaintiffs' and defendants' property and the disputed fence line is illustrated by the following diagram:
*601 
It was not until 1978 that the plaintiffs hired Kenneth McKay to make a survey to establish the boundary line. The plaintiffs claim that in 1979 they built a new fence according to this survey. They alleged that the defendants tore down this fence in April, 1980 and reestablished the fence along the old fence line.
The plaintiffs originally filed a boundary action on July 18, 1980, but that suit was dismissed for abandonment on November 16, 1989.
The plaintiffs filed the present suit to establish the boundary on December 15, 1989. On January 8, 1989, the defendants answered and filed a reconventional demand in which they asserted ownership by virtue of 30-years acquisitive prescription.
The case was tried on May 10 and July 19, 1990. The trial court decided in favor of the defendants, finding that they established ownership of the disputed property by 30-years acquisitive prescription.
*602 The trial court found that the disputed fence had been intact from 1944 until a portion was reconstructed in 1965 to straighten out a curvature. The original fence curved out to encompass a slough or watering hole, but in 1965, that portion of the fence was straightened out. The court found that this action did nothing to interrupt the defendants' possession of the property up to the straightened fence line.
The court found that the defendants' possession had been corporeal since its inception. Citing LSA-C.C. Art. 3427, the court found that there was no showing that J.I. Dixon intended to possess for anyone else, therefore he is presumed to have possessed for himself as owner.
The court found that the defendants rebutted the plaintiffs' evidence that the fence did not appear in aerial photos taken in 1941 and 1951 by presenting the testimony of other adjoining land owners who stated that their fences, which they knew were actually in place, did not show up in such aerial photographs.
The court also found that evidence presented by the plaintiffs to show that the disputed fence was constructed in 1952 was rebutted because it was shown that the witnesses were testifying about a fence on the north/south boundary of the plaintiffs' property and not the east/west boundary at issue here.
The court found that the defendants possessed the property as owners from 1944 and acquired ownership by 1974.
The court also found that even though the plaintiffs constructed a new fence on the survey line in February, 1979, the defendants tore this fence down in August, 1979, not April, 1980. Therefore, their possession was not interrupted for a period of more than one year.
The plaintiffs appealed.

POSSESSION WITH INTENT TO OWN
The plaintiffs argue that the trial court erred in finding that the defendants and their ancestor in title, J.I. Dixon, possessed the land with the intent to possess as owners. This argument is meritless.
Regarding acquisitive prescription, LSA-C.C. Art. 3424 provides that to acquire possession, one must intend to possess as owner and must take corporeal possession of the thing. Corporeal possession is the exercise of physical acts of use, detention or enjoyment over a thing. LSA-C.C. Art. 3425. One is presumed to intend to possess as owner unless he began to possess in the name of and for another. LSA-C.C. Art. 3427; Nugent v. Franks, 471 So.2d 816 (La.App. 2d Cir.1985). The intent to possess as owner may be inferred from all the surrounding facts and circumstances. Williams v. McEacharn, 464 So.2d 20 (La.App. 2d Cir.1985). Openly maintaining property to which one does not have record title by raising crops or using the property for pasturage is evidence of intent to possess the property as owner. Williams v. McEacharn, supra.
In this case, the defendants' ancestor in title, J.I. "Sonny" Dixon, purchased property to the east of the plaintiffs' in 1944. The plaintiffs purchased property next to the Dixon property in 1961. A fence was in existence separating the plaintiffs' property and the defendants' property. The plaintiffs claim that after they purchased their property, they had discussions with J.I. Dixon about the fact that the fence did not appear to be on the true survey line, but rather was encroaching on the plaintiffs' property. They alleged that Mr. Dixon acknowledged that he did not know where the true property line was. These discussions allegedly occurred around 1965. The plaintiffs argue that at that time, J.I. Dixon stated that if the plaintiffs got the property surveyed, he would go along with the survey. The plaintiffs further claim that Mr. Dixon once asked them if he could tie onto the fence to continue a new fence to the southwest corner of his property. However, even though the plaintiffs subsequently obtained a survey in 1965 and marked the survey line with red marks on trees, the fence line was not moved and Mr. Dixon continued to possess the property up to the original fence line.
The evidence shows that from the date of purchase of the property by Mr. *603 Dixon in 1944, until his death in 1968 or 1969, he possessed the property as owner up to the fence line, raising cattle and crops on the property and cutting timber from it. Following Mr. Dixon's death and their assumption of ownership of the property, the defendants continued to occupy and use the entire property up to the fence line.
The defendants presented the testimony of numerous persons in the community who were familiar with the property, who were aware that the disputed fence was in place at least as early as 1944 and that this fence was recognized as the west boundary of the Dixon property. The defendants also presented not only their own testimony but that of persons in the community familiar with the property who testified that the property was utilized for raising crops and cattle, timber was cut from it and the property was frequently used for hunting. James E. "Mike" Dixon, a defendant and the son of J.I. Dixon, stated that the family always possessed the property up to the fence line.
The trial court correctly found that the defendants possessed the property up to the fence line as owners. As noted by the trial court, LSA-C.C. Art. 3427 establishes the presumption that one is presumed to intend to possess as owner unless he began to possess in the name of and for another. As noted by the trial court, there is no evidence that Mr. Dixon or any of the other defendants ever intended to possess the property for anyone else. The defendants' testimony established that from 1944 on, they and their ancestor in title, J.I. Dixon, possessed the property as owners, up to the fence line.
The plaintiffs argue that Mr. Dixon acknowledged to them that he did not own the property up to the fence line. The plaintiffs offer only their own self-serving testimony to establish this claim. However, even if Mr. Dixon made such a statement, it is of no consequence. As stated in Snellings v. Lutz, 219 So.2d 781 (La.App. 2d Cir.1969), writ denied 253 La. 1090, 221 So.2d 520 (1969):
The acquisition of knowledge that the visible boundary does not coincide with the ideal boundary does not change the character of possession exercised by one who claims ownership of land beyond his ideal title. It is not the knowledge of the possessor, but the character of his possession that is important. If that possession is as owner, knowledge of the existence of the ideal boundary at a different place from the visible bounds of the land possessed should not change the nature of the possession. Possession having been commenced as owner, it is presumed to be continued in the same capacity until the contrary is shown.
Based upon these facts, we do not find that the trial court erred in holding that the defendant possessed the property to the disputed fence line with intent to possess as owners.

ACQUISITIVE PRESCRIPTION
The plaintiffs contend that the defendants failed to prove their ownership of the disputed strip of land by 30-years acquisitive prescription because the original fence, which enclosed the disputed tract, was not constructed until 1952. The plaintiffs further argue that the defendants' possession up to the disputed fence line was interrupted for more than one year beginning in 1979, when the plaintiffs took down the old fence and erected a new fence on the survey line. Therefore, the plaintiffs argue that the trial court erred in finding that the original fence existed prior to 1951 and that the defendants' acquisitive prescription was not interrupted by their loss of possession of the disputed strip of property for more than one year beginning in 1979. These arguments are meritless.
This action was originally instituted by the plaintiffs as a boundary action to which the defendants asserted ownership of the disputed property by 30 years acquisitive prescription.
When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for 30 years *604 without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds. LSA-C.C. Art. 794. Such a title holder may attain the 30-year possessory period which is necessary to perfect prescriptive title in the absence of good faith and just title by "tacking" on the possession of the ancestor in title. LSA-C.C. Art. 3442; Brown v. Wood, 451 So.2d 569 (La. App. 2d Cir.1984), writ denied 452 So.2d 1176 (La.1984).
Immovable property may be acquired through 30-years acquisitive prescription without good faith or just title. LSA-C.C. Arts. 3475 and 3486. The party alleging acquisitive prescription must establish that his possession has been continuous and uninterrupted, peaceable, public and unequivocal. LSA-C.C. Art. 3476. Whether a party has possessed property for 30 years without interruption is a factual issue which will not be disturbed on appeal absent a showing of abuse of discretion. Rogers v. Haughton Timber Company, Inc., 503 So.2d 1079 (La.App. 2d Cir. 1987).
The burden of proof to establish the facts essential to support the plea of 30-year acquisitive prescription rests upon the party who makes the plea. Rogers v. Haughton Timber Company, Inc., supra; Williams v. McEacharn, supra.

Age of Fence
The plaintiffs contend that evidence presented at trial established that the original fence between the parties' property did not exist prior to 1951. The plaintiffs claim that because the fence is not visible on aerial photographs of the property taken prior to 1955, the fence could not have been in existence prior to that time. The plaintiffs also presented the testimony of two witnesses, Willie Williams and Festus Smith, who testified that they helped a former area land owner, Boyce Loftin, erect the fence in 1952.
To the contrary, the defendants presented testimony from numerous longtime residents of the area that established that a fence was present when J.I. Dixon purchased the property in 1944. Otha Neilsen, a 64-year-old resident of the area who was familiar with the Dixon property testified that he first recalled seeing the fence around the 1930s and that it was "about as old a fence as I ever saw in my life." He testified that the fence had been patched and repaired numerous times.
Myrtle Powell, a 59-year-old native of Richland Parish, testified that she first saw the fence on the property in 1946. She testified that she helped repair the fence occasionally.
Elvis Jinks testified that he helped Mr. J.I. Dixon repair the fence when Mr. Dixon bought the property in 1944. He also testified that fences often don't show up on aerial photographs.
James E. "Mike" Dixon, the son of J.I. Dixon, testified that the Dixon family moved onto the property in 1944 and that the fence forming the west boundary of the property was in place at that time. Mike Dixon, who is the Claiborne Parish County agent, also testified that frequently fence lines do not appear on aerial photographs.
Shirley Dixon Davis, the daughter of J.I. Dixon, stated that she recalls the fence being in place at least as early as 1945 or 1946.
Mr. Vernon Tillman, who testified by deposition in 1980, stated that at that time the fence had been place for 35 years. This testimony was corroborated by Noble Leo Tillman who also testified by deposition in 1980 that he lived about one mile from the property and that the fence had been in place approximately 35 years.
The trial court found that a preponderance of the evidence established that the defendants possessed the property as owners from 1944 and would have acquired ownership of the property up to the disputed fence line in 1974. The trial court found that the testimony of Mr. Williams and Mr. Smith regarding the construction of a fence in 1952 related to a fence that ran east and west, rather than the fence at issue in this case which runs north and south.
*605 The aerial photographs are inconclusive as to the presence or absence of the disputed fence line, as well as other fence lines in the area prior to 1955. Also, the defendants presented ample testimony to show that a fence was in place at least by 1944 and that the defendants possessed all the property up to the fence line beginning in 1944.
Therefore we find, as did the trial court, that the defendants acquired ownership of the property up to the original fence line by 30-year acquisitive prescription in 1974.

Interruption of Prescription
The plaintiffs argue that the trial court erred in finding that the defendants' possession of the property was not disturbed for more than one year beginning in 1979. Because we find that the defendants obtained ownership up to the original fence line by acquisitive prescription in 1974, consideration of any disturbance in their possession in 1979 is not necessary to the decision of this case.
As stated earlier, LSA-C.C. Art. 3476 specifies that a possessor must have corporeal possession, or civil possession, preceded by corporeal possession to acquire the thing by prescription and that the possession must be continuous, uninterrupted, peaceable, public and unequivocal.
LSA-C.C. Art. 3434 provides that when the right to possess is lost, possession is interrupted. That article also provides that in the case of eviction, the right to possess is lost if the possessor does not recover possession within a year of the eviction.
LSA-C.C. Art. 3465 provides that acquisitive prescription is interrupted when the possession is lost. The article further provides that the interruption is considered never to have occurred if the possessor recovers possession within one year, or if he recovers possession later by virtue of an action brought within the year. LSA-C.C. Art. 3466 provides that if prescription is interrupted, the time that has run is not counted. Prescription commences to run anew from the last day of interruption.
Had the fence not been in existence prior to 1952, then, in 1979, when the plaintiffs moved the fence line, interrupting the possession of the defendants, this act would have interrupted the running of prescription if the defendants allowed the fence to remain for more than one year. The plaintiffs, in arguing that the defendants did not tear down the new fence for more than one year contend that the defendants' acquisitive prescription was interrupted and lost. However, as discussed above, the defendants acquired ownership by 30-years acquisitive prescription in 1974. Therefore, any interruption in possession would have given rise to a petitory action on the defendants' part to assert ownership of their property by acquisitive prescription. See LSA-C.C.P. Arts. 3651 and 3653. In this case, the defendants have established ownership of the disputed property by virtue of 30 years acquisitive prescription which ran in 1974. Therefore, the disturbance created in 1979 by the plaintiffs' action in moving the fence line does not affect the defendants' ownership rights.

CONCLUSION
For the reasons stated above, we affirm the trial court judgment in favor of the defendants and against the plaintiffs.
All costs are assessed to the plaintiffs.
AFFIRMED.
NOTES
[1] Shirley Dixon Davis, daughter of J.I. Dixon and her husband, Samie Charles Davis now own a portion of the property. In 1967 they purchased 20 acres from J.I. Dixon. In 1973 they purchased 40 acres from James E. Dixon who had previously purchased the property from his father, J.I. Dixon.
[2] The southern portion of the fence originally curved out onto the plaintiffs' property to include a slough or watering hole. This curvature was straightened in 1965.