693 So.2d 1319 (1997)
William B. BENNETT, Plaintiff-Appellee,
v.
LOUISIANA PACIFIC CORPORATION, Defendant-Appellant.
No. 29598-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1997.
Concurring Opinion May 13, 1997.
*1320 Gaharan & Wilson by Donald R. Wilson, Jena, for Defendant-Appellant.
Dimos, Brown, Erskine & Burkett by David G. Erskine, Columbia, for Plaintiff-Appellee.
Before BROWN, WILLIAMS and CARAWAY, JJ.
Concurring Opinion of Judge Caraway, May 13, 1997.
BROWN, Judge.
Although his filing was captioned a possessory action, plaintiff, William Bennett, essentially sought damages as a landowner for the wrongful cutting of his timber pursuant to La.R.S. 3:4278.1 (formerly 56:1478). Defendant, Louisiana Pacific Corporation (LP), admitted cutting the timber but claimed ownership of the property. After concluding that plaintiff acquired title to the property by 30 years adverse possession, the trial court rendered judgment in favor of Bennett, finding him to be the legal possessor of the disputed property. Bennett was also awarded the fair market value of the timber as stipulated by the parties. LP has appealed. Bennett filed a motion with this court urging that he has acquired ownership of the disputed tract, not mere possessory rights. We amend to recognize *1321 Bennett's ownership and as amended, affirm.

NATURE OF THE ACTION
To resolve this case, it is first necessary to determine the nature of the action. Plaintiff captioned his lawsuit "Petition to Be Restored and Maintained in Possession." In the body of the complaint plaintiff alleged that he possessed the property as owner. He then alleged that defendant tore down his fence, entered his land and cut his merchantable timber. Under La.R.S. 3:4278.1, plaintiff sought treble damages for the timber cut, the value of the fence and attorney fees.
In its amended answer to the petition, LP stated that it purchased the property in question in 1980 and had maintained corporeal possession since that time.
In a possessory action, which is a real action, the sole object is the protection of possession and title is not an issue. La. C.C.P. arts. 3655, 3661. Although similar, a suit seeking damages for trespass is not a real action as provided for in the Code of Civil Procedure. The cutting of trees on the land of another is denounced in our statutory law where the cutting is done "without the consent of the owner or legal possessor." Trespass is clearly an action in tort backed by statutory law. La.R.S. 3:4278.1. In an action for trespass, title to the land is the pivotal issue. A plaintiff who brings a trespass action bears the burden of proving his ownership.
The trial court concluded that this action was more properly characterized as a trespass claim. We agree. Bennett's petition stated that he possessed as owner. The basis of Bennett's claim was that LP had trespassed by crossing the old fence which was alleged to be the historical boundary between the two adjoining landowners. See Harvey v. Havard, 287 So.2d 780 (La.1974).

FACTS
On October 6, 1993, LP harvested merchantable timber with a stipulated value of $7,510 from immovable property located in Caldwell Parish. The ownership of that property and therefore the timber is in dispute.
LP and Bennett own contiguous tracts of land. Both deeds describe the property as running from the mouth of Cut-off Bayou to the center of Section 34. Bennett owned the property north of Cut-off Bayou and LP the property to the south. The location of Cut-off Bayou is disputed.
The Ouachita River makes a horseshoe bend in this area and Cut-off Bayou traverses the bend. LP's expert, using General Land Office maps and notes and aerial photographs, claims to have located the slough known as Cut-off Bayou. Although now indistinguishable, it had flowed south traversing the bend in the Ouachita River. A logging road ran parallel to the slough. At approximately the center of Section 34, the slough, as designated by LP's expert, turns southeast to empty into the Ouachita River, while the logging road continues in a southernly direction to the river. A net-wire fence follows alongside the logging road. The property involved in this dispute consists of approximately twelve acres, triangular in shape. It starts at a point approximately in the center of Section 34 and lies between the net-wire fence and Cut-off Bayou (as designated by LP's expert).
The net-wire fence was constructed as early as 1939 by Bennett's ancestor in title, David Dunn. The property was included with the rest of Dunn's property known as Hough Bend. The fence ran parallel to the old logging road. Dunn sold his property, inclusive of the disputed tract, to W.E. McDaniel in 1954. McDaniel maintained the fence until his death in 1972. Thereafter the fence was no longer maintained, though it was still visible.
The McDaniel heirs leased the property to several people after Mr. McDaniel's death. Bennett leased the property in 1987 and purchased it from the McDaniel heirs in 1991. Bennett maintained posted signs on the property along the remnants of the net-fence after he leased it in 1987. He used the property up to the fence line for hunting and grazing livestock.
*1322 LP claims to have acquired the property as part of a larger 287 acre conveyance on July 8, 1980. Both parties introduced into evidence, by stipulation, complete and separate chains of title. In fact, their record titles contain the same language that the boundary runs from the mouth of the bayou to the center of Section 34.

DISCUSSION
Acquisitive prescription is a means by which immovable property and related real rights may be gained simply by adverse possession of 30 years. La.C.C. art. 3486. The possessor need not have just title to the property or be in good faith concerning his possession. Id. The possession must be corporeal or if civil, preceded by corporeal. La.C.C. arts. 3488, 3476. This possession must also be continuous, uninterrupted, peaceable, public, and unequivocal. Id.
What constitutes adverse possession in any case depends on the nature of the property and is a question which must be determined in each case on its own facts. La.C.C. art. 3435; Rathborne v. Hale, 95-1225 (La.App. 4th Cir. 01/19/96), 667 So.2d 1197; Alford v. Jarrell, 471 So.2d 970 (La. App. 1st Cir.1985).
Calvin Griffin, age 66, testified that he had lived in Caldwell Parish all his life and was personally familiar with the disputed property. From 1939 to 1943, he worked for the owner, David Dunn, running a hay rake on the property. The western boundary of that property was an old road with a hog-wire fence running due south to the Ouachita River. He further testified that Dunn grew hay and grazed dairy cattle up to the boundary of that fence. There were also row crops planted along the river bank. The fence remained intact up to and at the time Dunn sold the property to W.E. McDaniel in 1954. Griffin testified that he hunted on the property when McDaniel owned it.
Edgar Owen, age 77, testified that he had also lived in Caldwell Parish all his life and worked on the disputed property during the time it was owned by David Dunn. Owen had repaired the net-wire fence in question and had tended to cattle and cut and bailed hay on the disputed property. He described the hog-wire fence, which was in existence the entire time he worked on the property, from the 1930's until 1952. He also hunted on the property after it was purchased by McDaniel.
Leonard Gregory, age 56, testified that he grew up and lived not far from the property. He has hunted on or near the property most of his life. He testified that the fence which runs along the dirt road creating the western boundary of the property was maintained by Mr. Dunn and then by Mr. McDaniel until his death in 1972.
There was also a barbed-wire fence erected in the early 1970's along Cut-off Bayou. Bobby Ryan had leased the property from the McDaniels from 1975 to 1986. Ryan testified that when he inspected the property, he found the net-wire fence that paralleled the logging road and a newer barbed-wire fence that followed the cypress brake to the river. This cypress brake was Cut-off Bayou. Ryan, who farmed the land north of the brake, maintained the barbed-wire fence but not the net-wire fence. Ryan posted the property along both fence lines and hunted the property up to the net-wire fence.
Based upon this testimony, the trial court stated in its reasons for judgment:
There being no evidence of any disturbances to the possession of the disputed property by the plaintiff's ancestors in title prior to 1969, the plaintiff acquired ownership of the disputed property extending to the net wire fence by thirty-years' acquisitive prescription in 1969.
Whether or not disputed property has been possessed for 30 years without interruption is a factual issue and will not be disturbed on appeal absent a showing of abuse of discretion. Livingston v. Unopened Succession of Dixon, 589 So.2d 598 (La.App. 2d Cir.1991); Rogers v. Haughton Timber Company, Inc., 503 So.2d 1079 (La.App. 2d Cir.1987); Hinton v. Weaver, 430 So.2d 134 (La.App. 2d Cir.1983). We find no abuse of the trial court's discretion in this case.
Alternatively, defendant argues that despite plaintiff's ancestors in title acquiring the property by acquisitive prescription, *1323 plaintiff has abandoned the property or been dispossessed by his lack of activity and defendant's activities. The trial court found, and we agree, that any disturbance after 1969, when plaintiff, through his ancestors in title, acquired ownership rights, is irrelevant to those rights. La.C.C. art. 481; Livingston v. Unopened Succession of Dixon, 589 So.2d 598 (La.App. 2d Cir.1991); Brown v. Wood, 451 So.2d 569 (La.App. 2d Cir.1984).
As discussed above, Bennett's ancestors in title acquired ownership by 30-year acquisitive prescription in 1969. Thereafter, any interruption in possession would have given rise to a petitory action. In this case, the disputed property was always possessed by Bennett and his predecessors. In 1975, Ryan leased the property. Ryan posted the old net-wire fence line and hunted this area up to 1986. In 1987, Bennett leased the property, posted it along the net-wire fence, grazed cattle and hunted within its bounds.
LP, on the other hand, purchased the property in 1980. Thereafter, they cruised this 12 acres as part of a greater tract and may have cut some bug infested timber. These actions did not interrupt Bennett's or his predecessors' possession up to the historical boundary represented by the net-wire fence.
Although the trial court found that Bennett had acquired ownership of the disputed property by 30 years' prescription, the judgment itself awards Bennett only possession of the tract. We amend the judgment to the extent that it does not coincide with the obvious intent of the trial court in its reasons for judgment.

CONCLUSION
For the reasons stated above, the judgment of the trial court is amended to recognize Bennett's ownership of the disputed tract of land, and as amended, the judgment is affirmed. Costs are assessed to the appellant.
CARAWAY, J., concurs with written reasons to follow.
CARAWAY, Judge, concurring.
Since I view this action as having adjudicated the issue of the conflicting ownership of these adjoining landowners, I concur with the result reached by the majority and as originally expressed by the trial court in its written reasons for judgment declaring plaintiff's ownership as extending to the old net wire fence line constructed by his ancestors in title in the late 1930's.
The dispute stems from a common boundary expressed in terms of an ancient, natural boundary, Cut-Off Bayou, which, because of the swampy nature of the topography, has waned as a distinguishable landmark. Plaintiff's 1991 deed is for all land "above" or north of the bayou, and Louisiana Pacific Corporation's ("LP") 1980 deed conveyed all land south of the bayou. Because of the elusive nature of the natural boundary, plaintiff and his ancestors-in-title were able to possess beyond their titles and beyond the ideal boundary to a visible boundary, a road, along which was built the old net wire fence which encroached upon the tract of LP and its ancestors.
From this view of the facts, these adjoining owners needed their real rights of ownership adjudicated and their common boundary fixed. I disagree with the majority that this action is a trespass action. LP cut the timber in the disputed area intending to possess the land and the timber as owner. LP is not a trespasser in the sense of one who violates ownership rights of another without any claim of ownership of his own or color of title. Based upon the resurrected location of Cut-Off Bayou established by the testimony at trial, LP's ancestors have had the only title to the disputed area. LP's actions amounted to an attempt to establish possession of a portion of lands within its title and to reap the production of timber.
A real action can be coupled with a claim for the recovery of fruits or products against a possessor or other claimant,[1] and that possessor *1324 or claimant, because of his assertions toward the property as owner, is not a trespasser. See the last paragraphs of La.C.C.P. arts. 3652 and 3655, La.C.C. arts. 485, 486 and 488, and revision comment (e) to La.C.C. art. 488. Finally, the majority's characterization of this suit as a trespass action disregards LP's defense of possession and "record" ownership as set forth in its answer and amended answer to the suit and its demonstration of its chain of title at trial.
The issue of which real action was tried in this instance is made difficult by plaintiff's initial labeling of the suit as a possessory action. By the time of trial, however, the complete record title chains of both parties and their ancestors-in-title were introduced into evidence by stipulation. The trial court ruled that LP asserted record title and had converted the suit into a petitory action under La.C.C.P. art. 3657 and that ruling, to the extent that the case is viewed as a possessory action, can be sustained. Moreover, because of the scant nature of either parties' actions with the property in the twenty years preceding LP's timber harvest, the plaintiff proceeded at trial with evidence of the corporeal possession of his ancestors-in-title beginning with the time of the earliest existence of the old net wire fence which became the boundary between the tracts by virtue of plaintiff's acquisitive prescription.
Under these circumstances, I note that La.C.C.P. art. 3657 provides in part:
"If the plaintiff brings the possessory action, and without dismissing it and prior to judgment therein institutes the petitory action, the possessory action is abated." (Emphasis added.)
Though the original comment to the article does not discuss precisely the type of situation which developed in this case, the language of the article indicates that a plaintiff who improperly cumulates the possessory and petitory action does not judicially confess the possession of the defendant. The plaintiff's possessory claim under the facts of this case resulted of necessity in a showing of the commencement of that possession by the earliest utilization of the old net wire fence by his ancestor-in-title and not by LP's. Upon making such showing of actions extending back to the late 1930's and continuing thereafter, the plaintiff proved more than mere possession but possession amounting to thirty-years acquisitive prescription.
Faced with this situation, LP did not object to the introduction of the evidence or, more importantly, plead surprise,[2] but proceeded with its assertion of the superior chain of title, proof of the former location of Cut-Off Bayou, and its acts of possession on its adjoining property and actions allegedly amounting to possession of the disputed property after LP's 1980 acquisition and before the timber harvest. All told, as reported by the majority, plaintiff's proof established ownership in its ancestors by the late 1960's, no abandonment of such ownership, and no actions of corporeal possession, and possibly ten-years acquisitive prescription, by LP prior to the time of the timber harvest. Under these circumstances, neither party was prejudiced by the trial court's adjudication of ownership as pronounced in his written reasons for judgment, and the later judgment awarding plaintiff only possession should be amended.
Seeing no prejudice to either side since both sides presented evidence in support of their claims of ownership dating back to the 1930's, I am also supported in the position that a real action has been adjudicated by the provisions pertaining to the boundary action, La.C.C. arts. 792 and 794 and La. C.C.P. art. 3693. Despite any remaining rigidity in the procedure for possessory and petitory actions, the boundary action which these two parties effectively litigated allowed the court to fix the boundary on the basis of the prevailing party's ownership or, in the *1325 absence of proof of ownership, possession. More significantly, the allowance under La. C.C. art. 794 for plaintiff's tacking of possession beyond the bounds of his ancestors' title to the visible boundary which encroached onto LP's tract was necessary for plaintiff to prevail herein.
In conclusion, while I dispute the majority's rationale that this was a trespass action in which a judgment granting ownership can be rendered, the result is correct. The procedural rules of the possessory action which apparently still continue to cause problems with litigants and the courts may be avoided in disputes between adjoining landowners through the boundary action which was essentially adjudicated in this instance.
NOTES
[1] Since the record shows that plaintiff instituted this action within one year of LP's disturbance, LP had not established possession of the property. Nevertheless, though LP was never a possessor of the property, its claims to the property founded on the lost ownership of its ancestors makes LP more than a mere trespasser. Indeed, because of this situation, the trial court properly found LP's actions in good faith for the purpose of the treble damage claim under La.R.S. 3:4278.1.
[2] Both plaintiff's petition and amended petition plead only minimal facts (and legal conclusions) pertaining to his acts of possession of the property since his 1991 deed with no allegation of facts of the building of the all-important fence by his ancestors. Nevertheless, evidence of the fence's construction was introduced without objection and the total amount of possessory data adduced at trial amounted to acquisitive prescription. See La.C.C.P. art. 1154.